DONNELL, Appellant, v. WRIGHT et al.

Division One, November 21, 1906.

1. **APPEALS: Effect of Reversal: Nonsuit.** Where the judgment in the trial court was for plaintiff and is reversed on defendant's appeal with nothing more, the reversal is to be treated as a nonsuit, and the circuit court is not repossessed of jurisdiction to go on in the same case, but plaintiff may sue again within a year. But it is not held, because not an issue, that an opinion of the appellate court holding that plaintiff has no case at all on the facts and law, followed by a reversal only, leaves the identical issue on the identical facts open for further adjudication in a new suit.

2. ———: ———: Not Remanded: Error How Corrected. Plaintiff, losing in the trial court, in ejectment, appealed, and the judgment was reversed, the opinion inadvertently failing to add that the cause was remanded, and the mandate followed the opinion. No motion was made to modify opinion or judgment or recall and amend mandate, nor was any action taken for over three years when plaintiff sued out of the trial court a *scire facias* to revive the proceedings. *Held*, that it was plaintiff's duty to take timely action in the appellate court to have the judgment and mandate corrected, and the *scire facias* proceedings to revive cannot be upheld, for the reason that on a reversal of the judgment the trial court lost jurisdiction to try the case; that is, jurisdiction which had by the appeal vested in the appellate court was not by the mere reversal handed back to the trial court.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judg

AFFIRMED.

*R. B. Garnett* for appellant.

(1) The simple reversal of a judgment by a court of review is not a final judgment and in law has the effect of remanding the cause to the trial court to be dealt with according to the opinion of the reviewing court. No special direction for remanding the cause is necessary, as the opinion of the Supreme Court is to be consulted. 1 Freeman on Judgments (4 Ed.), sec. 32; 2 Freeman on Judgments (4 Ed.), sec. 481; Falkner v. Hendy, 107 Cal. 54; Stearns v. Aguire, 7 Cal. 448; Woods v. Jones, 56 Ga. 520; Walker v. Dougherty, 14 Ga. 653; Merrill v. Merrill, 65 Me. 81; Jordan v. Humphrey, 32 Minn. 522; West v. Brashear, 14 Pet. (U. S.) 51; Heidt v. Miner, 113 Cal. 385; Ins. Co. v. Natl. Loan Co., 51 Minn. 199; Treadway v. Johnson, 39 Mo. App. 176. (2) The reversal of a judgment against a plaintiff restores him to his place in the court below which he had before it was pronounced, and it is the duty of

the trial court to do him justice in accordance with the decision of the appellate court. R. S. 1899, sec. 869; Colburn v. Yantis, 176 Mo. 686; In a road case, 135 Pa. St. 176; Judson v. Gray, 17 How. Pr. 292; Becker v. Becker, 50 Iowa 139, 45 Iowa 239; Woodruff v. Bacon, 35 Conn. 97; Crispen v. Hannovan, 86 Mo. 160.

*C. O. Tichenor* for respondents.

(1) The question here is whether a judgment of this court simply reversing a judgment is the same as a judgment reversing and remanding. Is it true, as claimed, that a judgment of reversal necessarily remands the case? Is a mandate the same in effect without the words which were erased as it is with them? Are these words omitted simply surplusage? The whole case turns upon the effect of the judgment in this court—for the mandate cannot be broader than the judgment. (2) There can be no question but that up to this date, under the practice in this State, there is a wide difference between a judgment of reversal simply, and a judgment reversing and remanding. These matters of practice may be termed arbitrary, but they are a part of our law, and an important part, too. It would be strange if decisions of other States could not be found upon questions of practice differing from ours in nearly everything, and this court could not conform to them if it tried. Secs. 866, 869, R. S. 1899. (3) The opinion is the act of one judge, although he may speak for the court; the judgment of the court is the act of the court in pursuance of that opinion—"the determination of the cause in appeal or error." The determination of the cause on the appeal in this case was that the judgment be simply reversed. The argument of counsel might be plausible if the judgment below had been affirmed—for there the judgment of the court below would not be harmed by the determination of the appellate court. Meyer v. Campbell, 12 Mo. 609; Du-

rant v. Essex Co., 101 U. S. 556. When an appeal is taken, the lower court loses jurisdiction of the case. Burgess v. O'Donoghoe, 90 Mo. 299. It regains jurisdiction if the judgment of the appellate court sends the case back again. (4) Counsel admits that he must seek authority from other States. We are content to rely upon the many decisions of this court on the subject. Musser v. Hardwood, 23 Mo. App. 499; Hurk v. Erskine, 50 Mo. 119; Zurfluh v. Railroad, 46 Mo. App. 643; Heizer v. Mfg. Co., 110 Mo. 605; Carroll v. Railroad, 107 Mo. 664; Rutledge v. Railroad, 123 Mo. 140. (5) A judgment when reversed simply has no vitality for any purpose. Atkinson v. Dixon, 96 Mo. 587; Young v. Thrasher, 123 Mo. 312. A reversal without remanding is in effect a nonsuit. Lumber Co. v. Lumber Co., 72 Mo. App. 258; sec. 4285, R. S. 1899. An appellate court has power to change its mandate during the term at which the order was entered. Bank v. Bank, 155 Ill. 250. If the leaving out of the remanding part of the judgment can be termed an irregularity, then it may be this court could have added this to the judgment within three years from its rendition under section 795, R. S. 1899.

LAMM, J.—On the theory there was an ejectment suit pending in the circuit court of Jackson county wherein Donnell was plaintiff and William P. Wright, Emaline Stacks and Robert Taubman were defendants, Donnell, on March 21, 1903, suggested the death of Taubman and sued out a writ of *scire facias* to revive the proceedings against the executors of his will, his widow and heirs. Service was had of, and return made to, that writ.

On issue joined, as hereinafter set forth, judgment went against plaintiff and he appeals.

In the determination of the question presented to us, a resume of the history of the controversy, as well as of the facts in judgment, will not be amiss. Thus:

The real estate in controversy is a part of a lot in block 31 in McGee's addition to the City of Kansas. In 1882 said parcel of ground (said to be a valuable one) was bid off at a tax sale for delinquent taxes, and Donnell, for a sum said to be trifling, received a tax deed upon which he bases title.

It seems the lot belonged to Taubman who either then had, or shortly thereafter, contracted to sell it to one Lynch. Pending this sale, and for the purpose of removing the cloud of Donnell's tax deed, Lynch lodged a bill in equity in the Jackson Circuit Court to clear up the title—Taubman causing said suit to be instituted and being a party to its prosecution. The bill in the Lynch case challenged the validity of Donnell's tax deed on six grounds, the sixth ground being as follows: "That at such sale, on the 8th day of December, 1882, the bidders in attendance thereat confederated with each other not to bid against each other for the property there offered for sale, and the tract or lot aforesaid was bid off by defendant in pursuance and at the time of such understanding, and acting thereon." [See Donnell v. Wright, 147 Mo. l. c. 645.] It seems, however, though issue was joined on the question of fraud, that issue was ignored or abandoned in the equity suit and the case proceeded to judgment below, and was considered here on Donnell's appeal on only five grounds (see Lynch v. Donnell, 104 Mo. l. c. 521-2); and his tax deed, adjudged void below, was held valid and the judgment reversed and the bill dismissed here. [104 Mo. l. c. 530.] Such was the end of Lynch v. Donnell.

Thereat Donnell (turning) himself took the initiative by bringing the present suit in ejectment in January, 1895, against Taubman and his tenants. Thereupon defendants, by way of defense, revived the old charge of fraud in the concoction of Donnell's deed, abandoned in the Lynch case, and sought to avoid Donnell's title because of a fraudulent combination between

him and other bidders at the tax sale. This defense was successful below, and judgment went for defendants. From this judgment, Donnell appealed and the case went off in this court on the theory of *res adjudicata* (see Donnell v. Wright, 147 Mo. 1. c. 646, *et seq.*), Donnell contending the issue of fraud, though not tried out, was within the pleadings and issues in Lynch v. Donnell, and, hence, was set at rest by that case; defendants contending *contra*. This court sustained Donnell's view, but reversed the case without remanding —the exemplification of our judgment and opinion filed below showing the following clause *erased* from the usual form of mandate: "That the said cause be remanded for further proceedings to be had in conformity with the opinion of the court herein delivered."

It is not shown that any motion was filed in this court to recall said transcript of our opinion and judgment or modify our judgment and send down a mandate to proceed, nor was any attempt made in this court by *nunc pro tunc* entry to have the judgment show that the cause was remanded for further proceedings, nor was the attention of this court called in any way or at any time to the anomalous condition of its record, whereby a judgment in favor of defendants was reversed, but the cause was left suspended (so to speak) in mid air, by our failure to make an order reversing the judgment, granting a new trial and remanding the cause.

The judgment of this court in Donnell v. Wright was rendered on February 15, 1899, and thereafter, after allowing the matter to sleep for over three years, Donnell suggested the death of Taubman and sued out of the circuit court of Jackson county a *scire facias* against Taubman's heirs and the executors of his last will to revive the proceedings.

An order was made that said heirs and representatives appear and show cause. They did appear and filed a return or pleading to the writ of *scire facias*

wherein (for cause) it was alleged: *First,* that the suit was not pending in that court, judgment having been rendered therein from which plaintiff appealed; the judgment was simply reversed and the cause was not remanded. *Second,* that the judgment was reversed by the Supreme Court December 23, 1898, and no action had been taken in any way since said date; that the other defendants were simply tenants and have long since removed from the premises and gone away; that under such circumstances even if the plaintiff had the right to revive, which he has not, he has lost it by his laches. *Third,* that the defendant, Robert Taubman, died December 31, 1899; that his will was duly probated in January, 1900, and the notice to creditors as required by law was published, beginning in said month; and that the time for bringing suit against said estate is long since expired.

To the foregoing return, plaintiff filed a plea admitting the judgment was reversed by this court, but denied the cause was not remanded and alleged that, in law and in fact, it was remanded and is now properly and legally pending in the circuit court of Jackson county. Plaintiff further alleged that the death of Robert Taubman was suggested at the January term, 1903, of said court and a *scire facias* sued out to revive this suit, and plaintiff denied that he is chargeable with any laches in the premises. Denying, furthermore, all allegations in defendants' return except those admitted as aforesaid, plaintiff alleged that the return of defendants was insufficient and, therefore, moved the same to be quashed and set aside and that the conditional order of revivor heretofore made be adjudged unconditional, absolute and final.

On issue thus joined a hearing was had, and, for the purpose of that hearing, admissions were made showing a boneless contention of fact—the facts being conceded to all intents and purposes as hereinbefore set forth. The trial court, having briefly found them as

aforesaid, adjudged as follows: "Therefore the court doth hold that plaintiff was not entitled to have his suit as revived, and doth find and adjudge that the same be not revived, and the plaintiff take nothing by his suit."

Defendants' learned attorney does not undertake to sustain the action of the lower court on the ground of laches or on the theory that Taubman's executors had published notice of their letters of administration for such time that the Statute of Limitations had run in favor of the estate against all claims. He seeks to sustain the lower court on the theory the cause was not pending in that court at the time the writ of *scire facias* was sued out, and was not so pending because this court did not award a new trial and remand the cause for further proceedings.

Plaintiff's learned attorney insists that the reversal of the judgment in favor of defendants, *ipso facto,* as a matter of law, without more, itself operated as a remanding of the cause, *a procedendo* under an award of a new trial, and that the circuit court thereby became possessed of jurisdiction to go on and try the case anew.

The foregoing contentions of counsel call for an adjudication of the effect and office of a formal award of a new trial without a remanding of a cause for further proceedings in the lower court, and the single question presented may be stated in this way: if a circuit court loses jurisdiction of a case, on its merits, by an appeal from its judgment, does it regain jurisdiction of the case on its merits by a mere reversal here without an award of a new trial and a remanding?

The exact point, to-wit, the effect of a reversal of defendant's judgment on appeal by plaintiff without remanding, seems new; while the kindred question, viz., the question of a reversal without remanding of plaintiff's judgment on defendant's appeal, is not new.

The right of appeal, being a creature of statute,

the duties and powers of appellate courts on appeals in Missouri are referable to the same source.  Looking thereto, we find the duty of such court in cases on appeal is to "examine the record" and, *first,* "award a new trial," or, *second,* "reverse," or, *third,* "affirm the judgment or decision of the circuit court," or, *fourth,* "give such judgment as such court ought to have given," as to this court "shall seem agreeable to law." [R. S. 1899, sec. 866; Laws 1903, p. 105.]

Each one of these four duties is a separate and distinct step, though it is obvious that award of a new trial and a reversal go together as twin steps to be taken on the same appeal.  If, for instance, a new trial is awarded, the judgment below is also reversed in order that a new trial be had; but a reversal may be an independent step, complete in itself and not to be followed by a new trial.  So, too, it is apparent that in awarding a new trial it may be on the whole case or on a certain issue, or a new trial may be awarded with directions to eliminate pointed-out errors, or to try the case on a certain theory of the law, or with the exclusion or inclusion of certain evidence—the award adjusting itself to meet the ends of justice—but it will be observed that in whatever form it be made, whether with or without directions, yet the statute contemplates it should be *made* and also that the judgment, standing in the way of a new trial, should be brushed aside by reversal in order that one be had.

Our statutes throw a further side-light of some value on the controversy, and that light is this: If the judgment below be for plaintiff and be reversed on defendant's appeal with no final judgment entered here and with no award of a new trial—*i. e.,* simply reversed and nothing more—such character of reversal is treated as a nonsuit, and the circuit court in such instance is not repossessed of jurisdiction to go on in the same case, but plaintiff may sue again within a year.

[R. S. 1899, sec. 4285; and see tit. "Damages; Limitation of Action:" Laws 1905, pp. 137-8.]

Where the appellate court enters, or directs an entry, of a judgment which disposes of a case, the result is more than a nonsuit (Young v. Thrasher, 123 Mo. l. c. 312) ; but it has been held that the reversal of a judgment in favor of plaintiff without more, *i. e.*, without the award of a new trial and a remanding for that purpose and without a final judgment in the appellate court, is tantamount to a nonsuit.   [Stevens Lumber Co. v. Kansas City Lumber Co., 72 Mo. App. 248.]

In leaving this view of the matter, it should be said (to guard against misunderstanding) that the question is not here, and, therefore, we do not decide, that an opinion of this court holding plaintiff has no case at all on the facts and the law, which opinion is followed by a judgment of reversal only, leaves the identical issue on the identical facts open to re-agitation in a new suit— it being meet to dispose of that question only when reached as a live matter in a live case, and not *obiter,* or by the by.

If there be no final judgment entered in the appellate court, in case of a mere reversal (without more) of a judgment in favor of plaintiff, and yet, if the circuit court is not repossessed of jurisdiction to go on anew, but plaintiff is held to suffer a nonsuit, it cannot be because the logic of the situation did not point to a continuation of the same case in the court below; for the judgment may have been reversed, not because plaintiff had no case on the facts and law, but because the minds of jurymen were littered up with irrelevant and prejudicial matter, or because the jury had been misled by false lights in the way of bad instructions. The reason plaintiff may not proceed in such a case must in the very nature of things, we think, be referred to the fact, and the fact alone, that jurisdiction, having been lodged in the appellate court by appeal, was not

handed back to the, lower court by that court, and therefore the case had reached the end of its row.

Take a case: A sues B and recovers, but his judgment was the product of erroneous instructions or improper evidence commingling with proper evidence. On that account, the judgment is reversed here on appeal. In such case the clear duty of this court, consistent with the inherent common sense of the thing, was to award a new trial and remand for further proceedings. But this court inadvertently neglected to do so—reversing only, without remanding. In the supposed case there was no reason under the sun the case should not have been remanded, as well as reversed, so that it might have been followed in subsequent proceedings below to a finality. Take another case: C sues D, and D has judgment against C. C appeals and secures a reversal of the judgment against him without remanding. In that case there was no reason under the sun why the case should not have been remanded so the circuit court could proceed with a new trial to a finality. But the entry was not made. Now, while in other supposable cases, the reversal of a judgment in favor of a plaintiff might stand on a footing to itself—a footing entirely distinct in principle from the reversal of a judgment in favor of a defendant—yet in the two hypothetical cases of A v. B and C v. D, we fail to see why they do not stand on the same footing; and if the court may not proceed below to a new trial and judgment in A v. B because jurisdiction was not handed back, by the same token the court below should not proceed in the case of C v. D unless jurisdiction was handed back by this court.

Let us approach the case from another standpoint. At common law, where a case came up on a writ of error, it was the custom to hand back jurisdiction, if at all, by an entry and a mandate called a *procedendo,* or a *venire facias de novo,* or a *remittitur* of record. Now, from the institution of this court down to the

Donnell v. Wright.

present hour, for eighty-five years, the same end has been attained by awarding a new trial and reversing and remanding the case where defendant's judgment was not allowed to stand. Thus: in Edwards v. McKee, 1 Mo. 86 (123), decided here at the October term, 1821, Edwards and another sued McKee and the jury found for defendant; thereupon the plaintiffs appealed and the case was sent below for a new trial on the following entry: "Let the cause be remanded to the circuit court for a new trial of the issue made on the first count in the declaration, not inconsistent with this opinion." From that case until Matlock v. Railroad, 198 Mo. 495, decided here June 19, 1906, wherein a judgment in favor of defendant was reversed and the cause was remanded, there has been deemed a necessity for a uniform use of appropriate phraseology which (in some plain form) grants a new trial and reverses and remands the cause before the trial court may go on.

We are now asked to hold that, in the absence of entry of such judgment here, with a formal mandate remanding the cause, the trial judge may (or must) read our opinion and judgment entry; and if he conclude, on the reasoning of the opinion, the cause should have been remanded by this court, or, to put it another way, that it was the clear duty and intention of this court to remand the cause but by slip it failed to do so, then the trial court thereby became possessed of jurisdiction to proceed *de novo.* If this be the law, then to the perplexing troubles now awaiting on a *nisi prius* judge there is added a new train of vexations hitherto beyond the ken of his philosophy,—vexations which, putting the boot on the wrong foot, lay upon him the duty of correcting (by avoiding the effect of) *our* errors, as we do *his.* Hitherto, while a court *nisi* has been charged with the duty of reading our opinion into our mandate, where the cause is reversed and remanded to be tried in accordance with such opinion, yet he has been relieved from any duty of laboriously

ascertaining by induction or deduction whether or not the cause has been sent below for further proceedings; for that fact has been set forth in our judgments and mandates in unmistakable terms so that one who runs may read.

Should we unsettle the practice and now hold that a cause is reversed and remanded, not because our judgment and mandate say so, but because they *should* have said so, and by such holding take a step to one side of the beaten path? We think not. Common observance is not to be departed from—certainly not without compelling cause. Custom, says Coke, is second law. [Brown's Case, 4 Coke 21.] And again: Custom is the best expounder of the law. [2 Inst. 18.] And again: Things which are done contrary to the custom and usage of our ancestors neither please nor appear right. [The case of Corporations, 4 Coke 78.] And again: The beaten path is the safest—*via trita est tutissima.* [The case of the Isle of Ely, 10 Coke 142.] So, too, the usage of a court becomes somewhat the law of the court and the fact that the profession for nearly a century have proceeded on the theory that a circuit court loses jurisdiction by an appeal and that jurisdiction is not handed back to that court except by some appropriate entry remanding the cause for further proceedings, is very good evidence (at least, in the absence of better) of what the law is. [Venable v. Railroad, 112 Mo. 1. c. 125.]

That the order of this court, under its constitutional power, is potent to confer jurisdiction upon the circuit court, where that court has once lost it, is shown and accentuated in cases cited in State *ex rel.* v. Gibson, 187 Mo. 1. c. 550, *et seq.*

We are not willing to be fettered to phrases, as such, and thus miss justice. But where certain forms of phraseology in the judgments and mandates of appellate courts have come down to us from antiquity uni-

formly moulded and employed in a certain way to evidence a certain intent, they become impressed with sanctity and significance, and, hence, ought not to be irreverently and lightly cast aside—the duty of courts being to attain reasonable certainty and to so adhere to fixed (even if arbitrary) rules, that litigants may know where the beaten (and safe) path lies. Thus, for example, in State v. Meyers, 99 Mo. 107, and State v. Coleman, 186 Mo. 151, it was held that though the preamble of an indictment showed the presentment made upon the oaths of the grand jurors, and though the preamble of an information showed the information made under the official oath of a prosecuting attorney, yet, in a given instance, such indictment and information to be valid must conclude with an ancient formula.

It is argued in effect by counsel of appellant that because (or conceding) this court committed error in not awarding a new trial in form and remanding the cause, yet we should ignore such error and, in a roundabout way, now proceed to judgment precisely as if we had done what we ought to have done, to-wit, awarded a new trial and remanded the cause. Which argument proceeds upon the soothing hypothesis that we sit for the correction of errors in *lower* courts only—that we may not correct our *own* in an orderly way, but blink them and (broadening our phylacteries) proceed blandly as if we could make, or had made, none. Infallibility is a new and unexpected honor to confer upon any court—an honor that should exist in fact by approximation, if at all, and not be taken on by assumption merely. To say that we proceed in the correction of errors *nisi*, upon the theory we commit none ourselves, tickles the judicial fancy, but is quite untrue. To the contrary, this court recognizes its fallibility by providing for correcting its errors on motions for rehearing. It cannot be doubted, moreover, that during the term this court holds in its breast its own judgments, and, on a suggestion of error, it may recall its own man-

date and see to it that its judgment is amended so as to conform to its opinion. A judgment is the application of the law to the facts found, "the sentence of the law upon the record," the determination of the cause, the act of the whole court to effectuate the reasoning and findings of the opinion. If, through slip, our judgment be faulty, why may it not be corrected by a *nunc pro tunc* entry on seasonable application?

In a lawsuit one must certainly watch and, withal, may profitably pray. When, therefore, this court, on the appeal of plaintiff, reversed a judgment for the defendants it should have remanded the case for a new trial; but, when it did not the burden was on Donnell to be alert and to come here betimes and pray us to correct our judgment and mandate. This he failed to do, sleeping on his rights for three years in a slumber so profound as to be likened (in figure) to that of Rip Van Winkle, or to that in which our great ancestor lost a rib (thereafter reconstructed in another and much more desirable form).

But, it is further argued by appellant's counsel that to hold now that jurisdiction was not handed back to the lower court, because of a defect in form, is to impale the justice of the case upon the bare point of a technicality. Conceding the technicality, *arguendo,* how does the case stand between appellant and respondents on the coldly correct technical application of strict law? Let us see. When the case was here before it came on a judgment in favor of respondents attainting Donnell's tax deed of fraud. We were then constrained to reverse that judgment—not, indeed, on the ground the evidence relied on as showing fraud did not support the judgment, but on the technical principle of law invoked by Donnell to the effect that defendant Taubman, in the former case of Lynch v. Donnell (he being in point of law a party thereto) had the opportunity to make his proof of fraud on issues framed in that cause; but he had been content to waive the

fraud issued in the Lynch case and had relied on other allegations. We said Taubman could not do this, that he had his day in court on the issue of fraud and could not vex Donnell twice thereon. So that it was by virtue of the strict application of that technical principle of law that Donnell had any case left in court.

Moreover, modern law does not apply any principle of *lex talionis*—the Mosaic theory of an eye for an eye and a tooth for a tooth seems to have been the common law of Asia. Thus, in sec. 196 of the Code of Hammurabi, it was enacted as follows: "If a man has caused the loss of a gentleman's eye, his eye one shall cause to be lost." And in sec. 200 of that Code, it was provided: "If a man has made the tooth of a man that is his equal to fall out, one shall make his tooth fall out." But this doctrine is exploded. [St. Matt. 5:38, *et seq. q. v.*] Neither does the law make practical application of the everyday adage: turn about is fair play, nor does it apply the doctrine of tit for tat. It is also written: Thou shalt not seethe a kid in his mother's milk. [Deut. 14:21 q. v.] Though all this be so, yet it is nowhere written that if plaintiff's case be kept in court at one time by grace of technicality, it may not be put out of court at another time by grace of another technicality; because thereby the beauty and even-handed symmetry of the law (the law being no respecter of persons) is made manifest, and all litigants at one time or another are allowed to contribute somewhat to this symmetry in order that not one jot or tittle of the law pass away till all be fulfilled, by common contribution.

We are content to let this opinion rest on the foregoing conclusions, rather than on the novel suggestion of the veteran and seasoned attorney representing respondents, made *ore tenus,* to the general effect that the error committed, when the case was here before, in failing to grant a new trial and to remand, was manifestly directed by the guiding hand of some supernal power in aid of justice. No authority was cited sustain-

ing that suggestion and we believe none exists. That our errors should be hid in the gloom of preternatural mystery might enable us to escape judicial responsibility, but such view is believed to be unsound and without practical value in jurisprudence. May we be allowed to assign a human source to appellate virtues, and at the same time ascribe appellate errors to Heaven? We think not.

Because there was no jurisdiction in the court below to try the case at bar, the judgment of the circuit court on the issue raised on the *scire facias* and return was right and is, therefore, affirmed. *Valliant, J.*, concurs; *Brace, P. J.*, and *Graves, J.*, concur in the result.