WOMACH, Plaintiff in Error, v. CITY OF ST. JOSEPH.

**Division One, February 22, 1907.**

1. **RES ADJUDICATA: Negligence: Unsuccessful Suit By Wife: Suit By Husband.** If a wife sue to recover for injuries done by negligence to her body and for the pain and anguish of mind flowing therefrom, and lose, the judgment in her suit does not, as a matter of law, bar the husband's recovery in his suit against the same defendant for the damages personal to himself arising out of the same accident—even though the issues in regard to defendant's liability and negligence are common to both suits, and even though the issue of the wife's contributory negligence is a factor common to both.

2. ————: **Distinctions: Suits in Tort.** The line of demarkation between what is *res adjudicata* and what is not, does not always run true in case-made law. Suits for damages sounding in tort are not proceedings *in rem,* or proceedings *quasi in rem,* wherein the status of the thing may be fixed once for all and made binding on all the world; and in solving the issue of *res adjudicata* in a negligence suit, the same spacious application of the doctrine made in those proceedings should not be made, but a narrower application.

————: **Tort: Identities.** A suit by the husband for damages for negligent personal injuries to his wife, is strictly *in personam;* and the general rule of *res adjudicata* is, that, given

the same subject-matter, all parties and privies are bound by the judgment entered against one of them. This means that the essential conditions under which the plea of *res àdjudicata* becomes applicable are the identity of the thing demanded, the identity of the cause of demand, and the identity of the parties in the character in which they are litigants.

4. ———: **Estoppel: Reasons For: Merger.** *Res judicata* is estoppel by record, and the conclusiveness of the rule is an inflexible principle of law having its foundation in the maxim that it is to the interest of the State that there be an end to litigation. But the plea, to be availing, must show either an actual merger or that the same point has already been decided between the same parties or their privies—that the plaintiff or his privies had an opportunity of recovering, and but for his own fault might have recovered in the original suit that which he seeks to recover in the second suit.

5. ———: **Torts: Who are Privies?** The term privity means mutual or successive relationship to the same rights of property. To make a man a privy to an action he must have acquired an interest in the subject-matter of the action, either by inheritance, succession or purchase, from a party subsequently to the action, or he must hold property subordinately. Privies may be privies of blood (such as an heir to his ancestor), privies in representation (as executor or administrator to his deceased testator or intestate), privies in estate (as grantor and grantee, lessor and lessee), or privies in law (as tenant by the curtesy or in dower). But it should be noticed that the ground of privity is property, not personal relation.

6. ———: ———: **Who Are Parties?** Under the term parties, in considering the scope of the rule of *res adjudicata*, the law includes all who were directly interested in the subject-matter of the litigation, and had a right to make defense, or to control the proceedings, and to appeal from the judgment, which right included the further right to adduce testimony and cross-examine witnesses. Persons not having these rights are regarded as strangers to the case.

7. ———: ———: **Privies: Husband and Wife.** A husband who sues for damages to himself, due to the negligent personal injury of his wife, for instance, for the money he paid out and will have to pay out for medical attendance upon her and for loss of her companionship, in that her eyesight was destroyed and she had remained a helpless invalid, does not stand in privity to the wife, and his suit is not barred because of the fact that her suit for the same injuries resulted in a judgment against her. He sues in his own right, and does not hold title

to the damages to him in subordination to her title. There is no identity or privity of parties, and he did not succeed to her position as regards the subject of the estoppel. Besides, he had no opportunity of recovering his damages in her suit; he had no control over the proceedings in her suit, he could not have appealed from the judgment therein, nor could he have cross-examined defendant's witnesses. And the rule is the same whether the wife sued alone for her damages, or was joined therein by her husband as a nominal plaintiff. [Disapproving Brown v. Railroad, 96 Mo. App. 164, and Morris v. Kansas City, 117 Mo. App. 298.]

8. ———: ———: **Husband and Wife: Separate Actions: Judgments.** Two independent rights of action—the one to the wife, for injuries to the body of the wife, for the incident pain and anguish, together with expenses paid from her own estate, and loss of earning capacity; the other to the husband, for consequential injuries suffered by him in the loss of her society, services, expenses, etc., known in the old law as an action *per quod consortium amisit*—arise for the negligent injury to the wife. The suits result from the same injury to the wife, but the causes of action are separate, and each is an entirety unto itself. At common law the ownership of the judgment in the wife's favor belonged to the husband, when he joined as plaintiff; but under our statute that is no longer true, the judgment now belonging to her.

9. ———: **Matters Necessarily Determined: Privies and Parties.** The rule that the conclusiveness of judgments is not confined to the entire matter litigated, but includes the finding of any facts which were in issue and necessarily decided, can be applied only when the one to be bound was either a party or in privity with a party.

10. ———: **Torts: Husband's Suit: Evidence.** In the husband's suit for damages for negligent injuries to the wife, the judgment roll in the wife's suit should not be admitted in evidence.

Error to Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

REVERSED AND REMANDED.

*Brewster, Ferrell & Mayer* and *Vinton Pike* for plaintiff in error.

(1) The circuit court was of the opinion that Brown v. Railroad, 96 Mo. App. 164, controlled this

case, and on its authority directed the nonsuit. In the Brown case the husband had joined his wife in the former action and was an actual and proper party. The judgment was in form in his favor upon the same issue raised in the second case. He had the right to adopt the judgment in favor of himself and wife against the same defendant, which could not be allowed to say it had not contested the same issue with him. Harmon v. Auditor, 123 Ill. 122, is cited by the Court of Appeals, and the following paragraph from the opinion in that case suggests the true ground upon which the Brown case may be sustained: "Moreover, the Pinckney suit was adopted by the town as its own litigation when the town paid the expenses of it, and compromised it through the town officers, and by resolutions of the town meetings." In the case at bar, the husband was not a party to the former judgment, nor privy to the cause of action. The accident founded two causes of action, one in favor of the wife, and the other in favor of the husband. The right and compensation of each were distinct and independent. Smith v. City, 55 Mo. 456. The only case cited by the Court of Appeals nearly paralleling this is Anderson v. Railroad, 9 Daly 488. Of that case decided by an inferior court, Van Vleet says: "This case seems to me to be wrong." 2 Form. Adj., 1130. But in that case the parent adopted the adjudication in favor of his son, for the loss of whose services he was suing. He could take advantage of the judgment or not; and if he could decline the advantage, he could refuse to be bound by a judgment adverse. As between the son and the defendant the former record established the facts which made defendant liable, and as the father was suing on a transaction between the son and defendant, he was privileged to rely on what had been established between them. A guarantor may plead in bar a judgment in favor of principal obligor, although an adverse judgment would not be binding upon him. A judgment conditional in effect

will not be binding until accepted.   In re Railroad, 58
Hun 563; Railroad v. Newton, 94 Ala. 443.   Where two
have an action and one sues and is defeated, the other
is not barred.   Railroad v. Kutac, 72 Tex. 643.   The
action in the Brown case was for a tort.   If it had been
a case of passenger against carrier, assumpsit on a con-
tract to carry safely, as in Pollard v. Railroad, 101
U. S. 223, the judgment in the former action, either
way, would have been binding.   But says the opinion
in the Pollard case, "the rule does not prevail when
the action is in tort against the carrier for a breach of
public duty."   This distinction is overlooked in the
Brown case.   It is recognized by this court in Blair v.
Railroad, 89 Mo. 338.   (2) At common law the hus-
band was a necessary party to the wife's suit for per-
sonal injuries, for he was the beneficiary of the recov-
ery, being entitled, upon reduction to possession, to her
actions for torts to the person causing pain and anguish,
as well as to those growing out of contract.   He was
concluded by the judgment at the common law against
himself and wife, for he was a necessary party and
had a real interest.   But our statute has made a radi-
cal change.   Section 4340, Revised Statutes 1899, pro-
vides that the damages sued for by plaintiff's wife
shall be and remain her separate property and under
her sole control.   Section 4335 provides that she shall
be deemed a *femme sole* and may sue and be sued at
law or in equity with or without her husband being
joined.   Section 4340 provides that damages for the
violation of any of her personal rights shall be and re-
main her separate property and under her sole control,
and that she may sue without joining her husband, by
any necessary action.   The release by one is not a bar
to the action of the other.   Blair v. Railroad, 89 Mo.
338; Smith v. Warden, 86 Mo. 382; Brown v. Kennard,
13 Mo. App. 175.   The husband, at common law, could
release the claim of the wife for damages, and still sue
for his own damages for loss of service, etc.   Schouler,

Dom. Rel., 77, p. 129. The action in this case was founded on defendant's breach of a public duty. The damages are independent and under our law must be recovered in separate and independent actions.

*W. B. Norris* and *E. M. Spencer* for defendant in error.

(1) At common law the wife had a cause of action against another by whose negligence she was injured, and also the husband had a cause of action against the same party for the same negligence. It was necessary in the suit by the wife that the husband should be joined. He stood as a sponsor for the wife and was a party to the cause of action. A judgment rendered in such a case against the wife was binding and conclusive as against him, he being a necessary party to the cause of action. This seems to be conceded by the brief of appellant, but, as under our present system of procedure, the husband is not a necessary party to the suit, and the contention is that the law of procedure as modified by Missouri practice has changed the substantive law in its principle that has existed heretofore. It is true that in Brown v. Railroad, 96 Mo. App. 164, the husband was a party to the suit, but the law of procedure ought not to and cannot change the substantive law until a statute has been passed changing such law. The husband is in privy with the cause of action of the wife. His rights arise out of the same facts and the same conditions. He cannot have greater rights than the wife by reason of the act of the defendant. The only difference is his measure of damages. (2) The cases relied upon by appellant are not in point. In Blair v. Railroad, 89 Mo. 338, it was decided that a husband has cause of action for the loss of the services of the wife, due to the negligence of another. This cause of action is not joint with the wife, and this is as far as the case holds. It does not hold that the husband's cause of

action is not in privity with the wife's cause of action
and arises out of the same facts. In Smith v. Warden,
86 Mo. 382, cited by appellant, the court held that the
receipt given by the husband did not purport to cover
his wife's cause of action, and if it could be so con-
strued, there was no consideration for it, and no au-
thority given by the wife for the husband to release
her cause of action.   In Brown v. Kennard, 13 Mo.
App. 175, the court decided that when the cause of ac-
tion was settled by the wife, the husband, even though
a party to the suit, was not a necessary party in the set-
tlement.   The case of Brown v. Railroad, supra, is
cited with approval in 106 Mo. App. 517.  We respect-
fully submit that the Court of Appeals, in Brown v.
Railroad, supra, was correct in its decision, and ask
that the judgment of the lower court be affirmed.

LAMM, J.—Plaintiff sued the city of St. Joseph
for $10,000 damages, in that he had been and would be
deprived of the society, companionship and services of
his wife, Louisa Womach, was compelled to lay out
large sums of money in taking care of and nursing his
said wife, and for medical attendance made necessary
by injuries suffered by her through the negligence of
defendant city, whereby her right arm was broken at
the wrist and the optic nerve of her right eye was so
injured that she became totally blind in that eye and
the sight of her left eye was sympathetically injured
and she had been rendered a constant sufferer and inva-
lid cripple for the remainder of her life. These injuries
were alleged to have been caused to Mrs. Womach
through the negligence of defendant city in the con-
struction of a certain sidewalk, with a negligent grade,
at the base of a stone wall, negligently permitted to be
erected and maintained.   Further, that said sidewalk
lay in a sunken condition whereby, in times of snow-
fall, large quantities of snow were drifted and piled
upon said walk and retained there, so that (given al-

ternate freezing and thawing) said snow, by reason of the shade of the wall and the steep construction of said sidewalk, did not melt off, but became transformed into ice and ice ridges of irregular shape. Further, that said city negligently permitted a certain portion of said walk to become and remain out of repair and dangerous in that snow and ice had been allowed to accumulate and remain in uneven, irregular, rounded and slippery masses and ridges, etc., for many weeks prior to Mrs. Womach's injuries—all of which was well known to the authorities of said city. That the duty of defendant was to remove the snow and ice from said sidewalk so that it would be reasonably safe for persons traveling thereon, etc.

Hurt on the 28th day of December, 1898, Mrs. Womach in her own right brought suit against the city for her injuries received in that accident and the pain of body and anguish of mind caused thereby. She was worsted at a jury trial and appealed to this court where the judgment against her was affirmed. [Womach v. City of St. Joseph, 168 Mo. 236.]

By its answer in the case at bar, defendant city tendered the general issue, except admitting it was a city of the second class, pleaded the contributory negligence of Louisa Womach, and followed that with a plea to the effect that the judgment in its favor in the wife's suit was *res adjudicata.*

Plaintiff attacked the latter plea by a motion to strike out, which being overruled, plaintiff excepted.

At the trial following on the heels of said ruling (a jury being waived), defendant city was allowed to introduce the record of the proceedings in the wife's suit. To this offer of proof plaintiff objected on the following grounds: (1) Because the plaintiff herein was not a party to the suit in which said record was made; (2) Because the injuries for which he brings suit were injuries done to himself and in which the plaintiff in the former suit had no interest, right or

claim; (3) Because the parties are not the same; (4) Because the subject-matter is not the same; (5) Because the issues in the two cases are not the same; (6) Because the judgment in the former case is not *res judicata* or a bar to this suit by this plaintiff.

These objections being overruled, plaintiff excepted and the record was admitted against plaintiff. Whereupon the court gave an instruction for defendant to the effect that the judgment in favor of the city in the case of Louisa Womach was binding and controlling upon Womach, was a bar to his action, and he could not recover. Having objected to this declaration and saved his exception, plaintiff took a nonsuit with leave. Filing and submitting an unsuccessful motion to set that nonsuit aside, plaintiff was allowed his bill of exceptions and brings the case here by writ of error.

The case at bar is stripped of all extraneous issues. The bone of contention is sharp and narrow. Plaintiff admits "the petitions in both cases were founded upon the same accident and the same issues in regard to defendant's liability and negligence were common to both." So, too, the issue of the wife's contributory negligence is a factor common to both. Therefore, on this record the sole question is this: If a wife sue to recover damages for injuries done by negligence to her body and for the pain of body and anguish of mind flowing therefrom, and if she be cast on trial, does the judgment in her suit, as a matter of law, bar the husband's recovery in his suit against the same defendant for the damages personal to himself and arising out of the same event?

I. The line of demarkation between what is *res judicata* and what is not does not always run true in case-made law. Moreover, it is manifest that when a case lies hard by the line of cleavage between what is and what is not *res judicata* it may be a nice question to determine on which side of the line the case falls.

The question presented is one of first impression in this court. In its consideration it will be well enough to recur to first principles, and at the threshhold point out (and assume) the rudimentary proposition that suits for damages sounding in tort are not proceedings *in rem*, or proceedings *quasi in rem*, wherein the status of a thing may be fixed once for all and made binding on all the world. [2 Black on Judgments (2 Ed.), sec. 795, and *supra*.] It follows, therefore, that in solving the problem in hand it will not do to use the same spacious application of the doctrine of *res judicata* made in proceedings *in rem* or *quasi in rem*, but a narrower compass must be fetched to set bounds to the field of legitimate discussion.

II.    As postulates to reason from, it may not be amiss to remind ourselves of the basic principles upon which estoppel by record is built and marshal those rules, definitions and legal principles to which we must refer the problem to be solved.    Thus:

This being an action strictly *in personam*, the rule is, that, given the same subject-matter, then all parties and privies are bound by the judgment entered. The general rule deduced from the decided cases is thus announced by Mr. Herman (1 Herman on Estop. & Res. Jud., sec. 102) : "The essential conditions under which the plea of *res judicata* becomes applicable are the identity of the thing demanded, the identity of the cause of demand, and of the parties in the character in which they are litigants."

The philosophy of the matter may be put in this way: It concerns the State that there be an end of law suits. *Interest Reipublicae ut sit finis litium.* [Coke Litt., 303.] Or as put by Broom: It is for the general welfare that a period be put to litigation. [Broom, Max., 331-343.] *Res judicata* is estoppel by record; and this rule of conclusiveness is an inflexible principle of law having its foundation in the foregoing maxim.

[1 Herm. Estop. & Jud., sec. 100.]    Says Broom:
(Broom Leg. Max. [8 Ed.], *331) : "It is for the pub-
lic good that there be an end to litigation; and if there
be any one principle of law settled beyond all question
it is this, that whenever a cause of action, in the lan-
guage of the law, *transit in rem judicatam*, and the
judgment thereupon remains in full force and unre-
versed, the original cause of action is merged, and gone
forever.    A plea of *res judicata* must show either an
actual merger or that the same point has already been
decided between the same parties—that the plaintiff
had an opportunity of recovering, and but for his own
fault might have recovered in the original suit that
which he seeks to recover in the second action."    And
again (*343) : "This latter maxim has" (*i. e.,* the
maxim *interest reipublicae, etc.*) "as may readily be
supposed, a wide application; it in fact embraces the
whole doctrine of estoppels, which is obviously founded
in common sense and sound policy, since, if facts once
solemnly affirmed to be true were to be again denied
whenever the affirmant saw his opportunity, there
would never be an end to litigation and confusion."

So that, it is hornbook law that as the State may
not put the same defendant twice in jeopardy for the
same crime, no more may the individual A vex B twice
in court on a cause of action once adjudicated. (*Nemo
debet bis vexari pro eadem causa*.)    Not only so, but
if A sue B and the cause proceeds to final judgment,
then not only are A and B bound by the judgment, but,
for like and obvious reasons, all persons in privity with
either A or B are bound also.    It is said that: "In the
law of estoppel one person becomes privy of another,
first, by *succeeding* to the position of that other as re-
gards the subject of the estoppel, and, second, by *hold-
ing* in subordination to that other."    [Bigelow on Es-
toppel (5 Ed.), p. 142.]    The same careful writer lays
down another general proposition of appreciable value
in the consideration of the matter in hand, and that is:

"But it should be noticed that the ground of privity is *property* and not *personal* relation. To make a man a privy to an action he must have acquired an interest in the subject matter of the action either by inheritance, succession, or purchase from a party subsequently to the action, or he must hold property subordinately." [*Ib.* p. 142.] Says DAY, J., in McDonald v. Gregory, 41 Ia. l. c. 516: "The term privity means mutual or successive relationship to the same rights of property. The executor is in privity with the testator, the heir with the ancestor, the assignee with the assignor, the donee with the donor, and the lessee with the lessor."

One general question, then, seeking the very root of the controversy, is: Who are privies? The answer is: Privies may be privies of blood (such as the heir to his ancestor), privies in representation (as executor or administrator to their deceased testator or intestate), privies in estate (as grantor and grantee, lessor and lessee, assignor and assignee) or privies in law (as tenant by the curtesy or in dower). [See 1 Greenleaf (16 Ed.), sec. 189, and cases from this court, cited *infra.*]

Another general question seeking the root of the controversy is: Who are parties? Says Professor Greenleaf in an oft-quoted passage (1 Greenl. on Ev. (16 Ed.), sec. 523): "It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger he may well be held bound. Under the term *parties*, in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defense, or to control the proceedings, and to appeal from the judgment. This right involves also the right to adduce testimony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are regarded

as strangers to the cause." [See Henry v. Woods, 77 Mo. l. c. 281; State *ex rel.* v. Johnson, 123 Mo. l. c. 54-5; State *ex rel.* v. St. Louis, 145 Mo. l. c. 567; Williams v. Husky, 192 Mo. l. c. 551.]

Before applying the foregoing rules, definitions and doctrines to the case at bar, it will be well enough to give ear to the voice of a very high court in a great case. Thus: In the case of Duchess of Kingston (2 Smith's Leading Cases [pt. 2, 8 Ed.], 734, *784), the Lords Spiritual and Temporal in parliament assembled put to the judges, *inter alia,* the following question: "Whether a sentence of the Spiritual Court against a marriage in a suit for jactitation of marriage is conclusive evidence in an indictment for polygamy?" In disposing of the case, Sir William de Grey, afterwards Lord Walsingham, then the Lord Chief Justice of the Court of Common Pleas, in delivering the unanimous opinion of all the judges, laid down the following principles, *arguendo*:

"What has been said at the bar is certainly true, as a general principle, that a transaction between two parties, in judicial proceedings, ought not to be binding upon a third; for it would be unjust to bind any person who could not be admitted to make a defense, or to examine witnesses, or to appeal from a judgment he might think erroneous; and therefore the depositions of witnesses in another cause in proof of a fact, the verdict of a jury finding the fact, and the judgment of the court upon facts found, although evidence against the parties, and all claiming under them, are not, in general, to be used to the prejudice of strangers. There are some exceptions to this general rule, founded upon particular reasons, but not being applicable to the present subject, it is unnecessary to state them.

"From the variety of cases relative to judgments being given in evidence in civil suits, these two deductions seem to follow as generally true: first, that the judgment of a court of concurrent jurisdiction, directly

upon the point, is as a plea, a bar, or as evidence, con-
clusive between the same parties, upon the same mat-
ter, directly in question in another court; secondly
that the judgment of a court of exclusive jurisdiction,
directly upon the point, is, in like manner, conclusive
upon the same matter, between the same parties, com-
ing incidentally in question in another court, for a dif-
ferent purpose. But neither the judgment of a concur-
rent or exclusive jurisdiction is evidence of any matter
which came collaterally in question, though within
their jurisdiction, nor of any matter incidentally cog-
nizable, nor of any matter to be inferred by argument
from the judgment."

III.   Did the trial court err in applying the law,
as hereinbefore expounded, to the case at bar?   We
think so. It is self-evident the parties are not the same.
Neither does Womach stand in the relation of being in
privity with his wife—that is, in privity in a precise
legal sense such as will meet the ends of the law.   He
sues, as will presently be seen, in his own right; and he
does not hold any title to the damages in suit in sub-
ordination to the title of Mrs. Womach.   He did not
succeed to the position of Mrs. Womach, "as regards
the subject of the estoppel;" for the estoppel worked
as to her personal damages in her own case, was ap-
plied to his damages in his case. . He is not in privity
with her in blood (as an heir), *i. e.,* his right of action
was not cast upon him by descent. He is not in privity
with her in representation (as executor or administra-
tor).   He is not in privity with her in estate (that is,
as regards his right of action, he is not her grantee, les-
see, donee, assignee, nor does he stand in any other
like capacity).   Nor is he in privity with her in law,
as such privity is defined in the books.

Take other tests—that is, look to the natural jus-
tice of the thing—to those natural equities having their
seat in the human breast—and see if he was not a

stranger? Did he have an opportunity of recovering his damages in her suit? No. Could he appeal in that case? No. Did he have his day in court in that case? No. Was he entitled to be heard in that cause, or could he control the proceedings? No. Could he adduce testimony? No. Could he cross-examine witnesses produced by defendant? No. Was he not denied by the law the right (had he invoked the right) to testify in his wife's cause? Certainly so. [Joice v. Branson, 73 Mo. 28; Harrington v. Sedalia, 98 Mo. 583.] By what recognized test of reason or authority, then, and under what principle of law is it, that he is held bound by that judgment, or becomes anything but a stranger to that proceeding? How comes it that Womach loses his own right of action, his own damages, by a judgment in another cause in which he could not lift a finger to protect that right, or secure those damages? It seems to me that the proposition that Womach is bound by the judgment against his wife is more than a paradox—it rises to the bad eminence of a solecism in the law.

The formulation of legal principles is not for a day or for one case; such principles are for general use in like cases until overthrown. It is obvious, then, that if Mrs. Womach's case is *res judicata* as to her husband, by the same token, if the husband's suit had come on first, the judgment in his case ought to be *res judicata* in the wife's case. Nay more, if Mrs. Womach had been driving a team belonging to John Doe,' and one of Doe's horses had broken its leg in the same accident, through the same cause, and John Doe had sued the city, he would be precluded by a judgment against her in her case, or against the husband in his—there being factors in common in all these suits. So, too, the same principle once established would allow a judgment, casting a parent suing for expenses and loss of services, to operate against a minor child, in its suit

for injuries, and *vice versa*—results visibly pregnant
with mischievous injustice.

Indeed, since no man loses his property except by
his own deed, transgression or neglect, to condemn a
man in his own independent right of action, unheard,
is to violate our Bill of Rights; because section 30 of
that Bill provides that "no person shall be deprived of
life, liberty or *property* without due process of law."
Now, property, in one sense, may mean a chose in ac-
tion. A chose in action, in one sense, may be any right
to damages, whether arising from the commission of a
tort, the omission of a duty, or the breach of a contract.
[See Tit. "Property" and "Chose in Action," Black's
L. Dict.] "Due process of law" means law in the reg-
ular course of administration through the courts.
[Jones v. Yore, 142 Mo. l. c. 44.] The term "due pro-
cess of law" is equivalent to the term "the law of the
land"—a term as old as Magna Charta. And, as said
by Webster in a brief sparkling forever as a jewel in the
crown of the American Bar in the Dartmouth College
Case (See 4 Wheat. l. c. 581), "By the law of the land
is most clearly intended the general law; a law, which
hears before it condemns; which proceeds upon inquiry,
and renders judgment only after trial. The meaning
is, that every citizen shall hold his life, liberty, prop-
erty and immunities, under the protection of the gen-
eral rules which govern society." [Barber Asphalt
Co. v. Ridge, 169 Mo. l. c. 384.] "In judicial proceed-
ings," says ANDREWS, J., in Bertholf v. O'Reilly, 74 N.
Y. 509, "due process of law requires notice, hearing
and judgment . . ." In this case the cause of ac-
tion of Womach was taken from him without notice,
without a hearing, and without a judgment against
him. Hence, it seems to me, he was denied due process
of law to all vital intents and purposes.

It is manifest there was no such "identity of the
thing demanded;" there was no such "identity of the
cause of demand;" and there was no such identity of

the "parties in the character in which they are liti-
gants," as meets the essential conditions upon which
the plea of *res judicata* proceeds under the sensible
rule announced by Mr. Herman, heretofore quoted; and
this opinion might conclude at this point were it not
for two cases decided by the Court of Appeals of Kan-
sas City, Brown v. Railroad, 96 Mo. App. 164, and Mor-
ris v. Kansas City, 117 Mo. App. 298, in which another
view was entertained and a contrary conclusion rea-
soned out.   The dignity imparted to the contention of
defendant in the case at bar by the opinions of that
learned court justifies a further and closer considera-
tion—certainty in the law, as a rule of right, being an
essential condition of judicial wisdom; and no change
in such rule can justify itself except it proceeds on the
fullest examination and solidest grounds.

IV.   The Morris case follows the Brown case. As
we gather it there was no vital difference in principle
between the two.   There was an incidental difference,
however, which it may be well to point out in passing.
Brown's wife was injured by the alleged negligence of
the Missouri Pacific Railway Company.   Thereupon
two suits were instituted.   In one it was sought to re-
cover for injuries to the wife; and in that suit husband
and wife joined as parties plaintiff.   Her case pro-
ceeded to final judgment; and, when the husband's case
came on, the judgment in the wife's case, to which he
was a nominal party, was offered and allowed below
as an adjudication concluding the railway company on
the issues of negligence and contributory negligence
raised in the wife's case, leaving nothing open except
the *quantum* of his damages.   On appeal, the ruling,
*nisi,* was approved.   In the Morris case two suits were
instituted—one by the husband and one by the wife,
the wife suing alone.   When the husband's case came
to trial a former adjudication in favor of the wife was
pleaded and allowed as *res judicata.*   On appeal, that
ruling was approved.

While a superficial view might draw a distinction between the Brown and the Morris cases, in that in the Brown case the husband was a party to the wife's suit (thus meeting, at least, one technical requirement of *res judicata*), yet it must be apparent that he was not a real party. His rights were not in litigation, he was a mere figurehead—a nominal party, joined at the option of the wife under Revised Statutes 1899, section 546, which provides that: "A married woman may, in her own name, with or without joining her husband as a party, sue and be sued in any of the courts of this State having jurisdiction, with the same force and effect as if she was a *femme sole*, and any judgment in the cause shall have the same force and effect as if she were unmarried." In this condition of the record in those two cases the principle involved is the same; and if the Brown case is good law, the Morris case is good law. So that, our consideration may be confined to the Brown case alone.

We may approach that case with a preliminary examination of the origin and nature of a husband's right to damages for an injury to his wife. Such ground of action is an old one, coming to us from the common law of England. In the old law (as now) the husband might sue for damages for taking his wife away. "The old law was so strict in this point," says Blackstone (3 Blk. Com. *139), "that if one's wife missed her way upon the road, it was not lawful for another man to take her into his house, unless she was benighted and in danger of being lost or drowned; but a stranger might carry her behind him on horseback to market to a justice of the peace for a warrant against her husband, or to the spiritual court to sue for a divorce." Drawing from the same well of the common law, it is pointed out (*140) that three kinds of actions are entertained for injuries offered to any person, considered as a husband, the third kind relating to the beating of a man's wife, or other ill use of her; "for

which,'' says our author, ''if it be a common assault, battery, or imprisonment, the law gives the usual remedy to recover damages, by action of trespass *vi et armis,* which must be brought in the name of the husband and wife *jointly;* but if the beating or other maltreatment be very enormous, so that thereby the husband is deprived for any time of the company and assistance of his wife, the law then gives him a *separate* remedy by an action of trespass, in nature of an action upon the case, for this ill usage, *per quod consortium amisit;* in which he shall recover a satisfaction in damages.''

Says Cooley (1 Cooley on Torts (3 Ed.), p. 470): ''A personal injury to the wife gives rise to two causes of action, one in favor of the wife to recover for the physical injury, the pain and suffering, expense, if any, paid from her own estate and loss of earning capacity, where she has a right to her earnings and is engaged in business or labor on her own account, and one in favor of the husband to recover for loss of his wife's services, society, etc., and for any expense incurred. . . . The term services, when employed to indicate the ground on which the husband is allowed to maintain an action, is used in a peculiar sense, and fails to express to the common mind the exact legal idea intended by it. Whatever may have been the case formerly, or may now be the case in some states of society, service, in the sense of labor or assistance, such as a servant might perform or render, is not always given by or expected from the wife; and if an action were to put distinctly in issue the loss of such services, it might, perhaps, be shown in the most serious cases that there was really no loss at all. But it could not be reasonable that the wrong-doer should escape responsibility because the family he has wronged were in such circumstances, moved in such circles, and were subject to such claims, by reason of public position or otherwise, that physical labor by the wife was neither ex-

pected nor desired. The word service has come to us in this connection from the times in which the action originated, and it implies whatever of aid, assistance, comfort and society the wife would be expected to render to or bestow upon her husband, under the circumstances and in the condition in which they may be placed, whatever those may be.''

The two independent rights of action—the one for injuries to the body of the wife, for the incident pain and anguish, together with expenses and loss of earning capacity (the latter in certain cases pointed out by the books)—the other for consequential injuries suffered by the husband in loss of society, services, expenses, etc., known in the old law as an action *per quod consortium amisit,* have come down to us hand in hand as distinct causes of action. Both suits result from the same injury to the wife, it is true, but the causes of action are separate and each an entirety unto itself. Both spring into independent existence at once upon such injury—the one seeking recompense for injuries to the person of the wife; the other recompense for injury to the husband *as husband and touches the marital relation.* [Smith v. St. Joseph, 55 Mo. 456; Furnish v. Railroad, 102 Mo. 669; Thompson v. Railroad, 135 Mo. 217. See also, Railroad v. Jones, 40 Pac. 891.]

In the present condition of our statutory law, the ownership of the proceeds of a judgment in favor of the wife no longer remains as at common law. There, such damages belonged to the husband when recovered by judgment in a joint action with his wife. [Reeve's Dom. Rel. (4 Ed.), pp. 87-8; Schouler's Dom. Rel. (5 Ed.) sec. 77.] But in our day, they belong to the wife alone. So runs the written law, Revised Statutes 1899, section 4340, which provides that: ''. . . any personal property, including rights in action, belonging to any woman . . . or has grown out of any violation of her personal rights, shall, together with all income, increase and profits thereof, be and remain her separ-

ate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband.'' That section also provides that she may sue in her own name without joining her husband.

In Smith v. St. Joseph, *supra,* it was contended that a recovery in a suit by husband and wife for injuries to the wife was a bar to the prosecution of a suit on behalf of the husband. But it was pointed out in that case that the two causes of action, the one for the wife and the other for the husband, could not be joined, and, hence, there was no bar in consequence of the previous recovery in the wife's case. Further, as indicating the *distinctness* of the two causes of action, we may profitably consider Smith v. Warden, 86 Mo. 382. In that case in the wife's suit there was an offer to show that the husband had executed a release for his own damages and the damages in suit (p. 394). The court instructed the jury that such release did not constitute a defense to the action (p. 396); and it was held that the instruction was right and the release was no bar in the absence of proof that the husband was agent of the wife and had authority to settle her damages.

To further the argument, regard may be had to Thompson v. Railroad, *supra.* In that case the husband's suit was on trial and the court gave the following instruction:

"When a married woman, without fault on her part, is personally injured by the negligence of another, two causes of action arise: one for the wife for the pain and suffering and the expenses she has herself paid, and the other by the husband, in his own favor for what he has actually lost. Now, this is the husband's suit and not the wife's, and a decision of this case on its merits in no wise affects or has anything to do with the wife's case. That case must be independently tried, upon its own merits, and this case must be tried upon its merits alone, on the testimony introduced

here, and none of the things mentioned above for which the wife can sue can be considered in this case.''

There was a verdict for defendant which was set aside, and from that order defendant appealed. It was contended there was error in the foregoing instruction, but this court said there was no error; that it was proper to inform a jury that the wife had her own action for injuries like this, and what elements enter in her case, and the grounds of her husband's action, and *"that each is distinct"* (p. 222). [See, also, Blair v. Railroad, 89 Mo. 334.]

It seems to us the reasoning underlying the foregoing authorities applies with equal force to the case at bar, and is against defendant's position, its tendency being to show that the two causes of action are so distinct that they cannot be joined, that the damages to each constitute a different subject-matter of litigation, that the title to the damages rests in different parties and that one party may not release the damages due the other.

Attending to persuasive authority, we find the precise question in hand has been passed on elsewhere, and the conclusion in the great majority of instances is also against defendant's position. Thus:

In Neeson v. City of Troy, 29 Hun 173, the husband sued. At the trial he was allowed to introduce the judgment roll in his wife's case in which she recovered damages for the same injury. On appeal this was held error. It was held that the husband was not in privity with the wife in her suit and that ''the fact that the same evidence, to a great extent, may be applicable in this case as was given in the action of the wife, such as proof of defendant's negligence, etc., does not make the former judgment conclusive in this action.''

In Groth v. Washburn, 39 Hun 324, the same point arose. There the defendant offered evidence, as we take it, to disprove his negligence. This evidence was rejected, and its rejection was predicated of the conclu-

sion that the judgment in the wife's case was conclusive upon the subject of defendant's negligence. This was held error. It was ruled (*Per Curiam*) that "the action was not between the same parties or those in privity with them. It was not in reference to the same subject-matter. It involved it only incidentally, and it was not an adjudication of the rights of the plaintiff. His action was entirely different from that of the wife. The judgment record was neither an estoppel in favor of the plaintiff, nor was it conclusive evidence on the subject of negligence." To the same effect is the reasoning in Chapman v. Frank, 15 Daly 282, and in Stamp v. Franklin, 144 N. Y. 607.

In Walker v. Philadelphia, 195 Pa. St. 168, it was sought to bind the defendant in the husband's suit by the verdict and judgment in the wife's suit so as to conclude the defendant city on the issue of its negligence. This was held error because the record of the wife's action is *res inter alios acta*, and so far from being conclusive of the city's negligence, is not admissible at all.

In Selleck v. Janesville, 104 Wis. 570, it was held that in an action to recover damages resulting to a husband from personal injuries to his wife, defendant's liability is not rendered *res judicata* by reason of a previous recovery by the wife for her own injuries, the husband not being a party to the former action and there being no privity between him and his wife as to the claim in the latter suit.

The reasoning employed by the Supreme Court of Texas in Railroad v. Kutac, 72 Tex. 643, fits the case at bar and is against defendant's position.

Somewhat applicable, too, is Sorensen v. Sorensen (Neb.), 98 N. W. 837. See, also, Perkins v. Goddin, 111 Mo. App. l. c. 442, and the cases and authorities cited, and Black on Judgments (2 Ed.), sec. 556.

Cases may be found to the contrary effect. For example: Anderson v. Railroad, 9 Daly 487; Pettengill

v. City of Yonkers, 1 N. Y. Supp. 805; Lindsey v. Danville, 46 Vt. 144. But we think the doctrine of those cases is unsound. Brown v. Railroad leans on the Lindsey case—a stout staff, for it was written by a great Judge (REDFIELD), but "even the worthy Homer sometimes nods"—*Quandoque bonus dormitat Homerus.*

In deciding the Brown case the Kansas City Court of Appeals relied upon the proposition that the conclusiveness of judgments is not confined to the entire matter litigated; but includes the finding of any facts which were in issue and necessarily decided. This proposition is sustained by the authorities cited, but it must go with the condition that the one to be bound is either a party or in privity with a party. Furthermore, that case proceeds upon the theory that in order to allow the application of the doctrine of *res judicata* all the parties may not be identical. The authorities cited sustain that proposition also. But care must be taken not to introduce confusion. It will be found, we think, in all cases where the point was made, or adjudicated, that the party to be bound had his day in court—that he was either a party or in privity and had once the chance to meet his adversary face to face on the issue, in fact or constructively. Many cases have been adjudicated showing the nicest discrimination in the application of estoppel by judgment, and in none of them will a rigid analysis show a deviation in principle from the rules laid down and principles announced hereinbefore as governing the application of *res judicata.* See, for example, Spratt v. Early, 199 Mo. 491; Donnell v. Wright, 199 Mo. 304; Edgell v. Sigerson, 26 Mo. 583; State *ex rel.* v. Railroad, 99 Mo. 30; Nave v. Adams, 107 Mo. 414; Young v. Byrd, 124 Mo. 590; State *ex rel.* v. Branch, 134 Mo. l. c. 604; Wiggin v. St. Louis, 135 Mo. l. c. 569; Exposition Driving Park v. Kansas City, 174 Mo. 425; Donnell v. Wright, 147 Mo. 639; Watson v. Walther, 23 Mo. App. 263; City of Springfield v.

Plummer, 89 Mo. App. 515; Matousek v. Catholic Union, 192 Mo. 588.

It is our conclusion that Brown v. Railroad, and Morris v. Kansas City, should not be followed; that the trial court should have sustained the motion to strike from defendant's answer the plea of *res judicata;* that, failing in this, the court should have excluded the judgment roll in the wife's case; and that, finally, the court erred in giving defendant's mandatory instruction.

It will do to say that our Brother WOODSON, who does not sit in the case, but who presided *nisi,* informs us he felt constrained by Brown v. Railroad, and that if left to his own judgment on the law he would have refused the peremptory instruction, refused to admit the judgment roll in the wife's case, and would have sustained plaintiff's motion to strike out the plea of *res judicata.*

The cause is reversed and remanded to be tried in accordance with this opinion.

All concur, except *Woodson, J.,* not sitting.