# IN RE: ALUMINA DUST CLAIMS

**ERWIN LABAST, Plaintiff**
**v.**
**LOCKHEED MARTIN CORPORATION, Individually and as Successor-in-Interest to MARTIN MARIETTA CORPORATION; MARTIN MARIETTA ALUMINUM, INC.; MARTIN MARIETTA ALUMINUM PROPERTIES, INC.; MARTIN MARIETTA CORPORATION, Individually and as Successor-in-Interest to MARTIN MARIETTA ALUMINUM, INC. and to MARTIN MARIETTA ALUMINUM PROPERTIES, INC.; GENERAL ENGINEERING CORPORATION, AND ALCOA, INC., Defendants**

Master Case No. SX-09-MC-031, Individual Case No. SX-07-CV-502

Superior Court of the Virgin Islands

Division of St. Croix

January 10, 2017

172

THOMAS K. ALKON, ESQ., Law Office of Thomas Alkon, Christiansted, USVI, *Attorney for Plaintiffs and Miriam LaBast-Greene.*

KEVIN A. RAMES, ESQ., SEMAJ I. JOHNSON, ESQ., K.A. Rames, P.C., Christiansted, USVI, *Attorneys for Lockheed Martin Corporation, Martin Marietta Corporation, Martin Marietta Aluminum, Inc., and Martin Marietta Properties, Inc.*

WILFREDO A. GÉIGEL, ESQ., Law Offices of Wilfredo A. Géigel, Gallows Bay, USVI, *Attorneys for General Engineering Corporation.*

BERNARD C. PATTIE, ESQ., Law Offices of Bernard C. Pattie, P.C., Christiansted, USVI, *Attorneys for Alcoa, Inc.*

WILLOCKS, *Administrative Judge*

## MEMORANDUM OPINION

(January 10, 2017)

**COMES NOW** the Court and issues this opinion further to an order issued on November 17, 2016, addressing two motions filed by Miriam LaBast-Greene. The first motion sought to have *Erwin LaBast v. Lockheed Martin Corporation, et al.* removed from *In re: Alumina Dust Claims* (a master case under which *LaBast* and twenty-one other cases were consolidated) and reassigned to another judge. The second motion requested leave to substitute Miriam LaBast-Greene as personal representative of the Estate of Erwin P. LaBast as plaintiff in place of LaBast. None of the defendants filed a response to either motion. After considering both motions — and after reviewing the proceedings in *LaBast*, in the *Alumina Dust* master case, and a number of the individual cases — the Court issued the November 17, 2016 order and granted LaBast-Greene's substitution motion, but declined to rule on her reassignment motion. Instead, the Court explained that it would direct the Clerk to transmit LaBast-Greene's reassignment motion to the Presiding Judge of the Superior Court for his review. However, before that motion could be transmitted, a procedural issue, indirectly raised by LaBast-Greene's motion, had to be resolved. That issue was whether a different case number should have been assigned to the master case when it was opened. In this instance, the Clerk's Office did not assign a different case number to *Alumina Dust* and, as a result, the case number assigned to LaBast's individual case was also used as the case number for the master case. So, before *LaBast* could be reassigned to any other judge, the Clerk had to first assign a new case number to *In re: Alumina Dust Claims* and

174

then determine which papers are master litigation papers that must be re-docketed in the master case and stricken from LaBast's individual case. This opinion provides the basis for granting LaBast-Greene's substitution motion and directing the Clerk's Office to transmit her motion to the Presiding Judge, but after assigning a new and different number to the master case.

## BACKGROUND

LaBast-Greene's reassignment motion impacts (albeit indirectly) the master case and also highlights what has become a common practice in the Superior Court. Hence, the Court must detail some of the background leading up to the creation of the master case. Between October 2007 and June 2008, twenty-two men filed lawsuits for injuries allegedly caused by exposure to toxic dusts during their employment at the former alumina refinery on St. Croix. Erwin LaBast alleged in his complaint that he worked at the refinery from 1967 to 2001 and developed pneumoconiosis from the "bauxite dust containing silica, alumina dust, and asbestos dust and fibers," which he was allegedly exposed to at work. (*See* Compl., ¶¶ 1, 3, and 5, filed Oct. 19, 2007, *LaBast v. Lockheed Martin Corp., et al.*, SX-07-CV-502.) The other plaintiffs, also former refinery workers, alleged similar injuries in their complaints. Most plaintiffs also sued the same companies as LaBast, such as Lockheed Martin Corporation, individually and as successor to Martin Marietta Corporation, Martin Marietta Aluminum, Inc., and Martin Marietta Aluminum Properties, Inc.,[1] and companies who later acquired or operated the refinery, such as Alcoa, Inc. and St. Croix Alumina, LLC, or who supplied products to the refinery, like General Engineering Corporation.[2]

As the individual complaints were filed, the Clerk's Office, following standard procedures, assigned each case at random among the judges in the St. Croix District. A few months later, the Honorable Francis J.

---

[1] Lockheed Corporation and Martin Marietta Corporation became wholly owned subsidiaries of the newly formed Lockheed Martin Corporation. (*See* Def. Lockheed Martin Corp.'s Answer, filed April 14, 2009, *LaBast*, SX-07-CV-502.)

[2] St. Croix Alumina was dismissed from *LaBast* by order entered June 13, 2008, and Alcoa by order entered November 7, 2016, again only as to *LaBast*. However, count one had previously been dismissed against Alcoa in 2009, as well as LaBast's demand for punitive damages. *See generally La Bast v. St. Croix Alumina*, SX-07-CV-502, 2009 V.I. LEXIS 39 (Super. Ct. Mar. 17, 2009).

D'Eramo took the lead and began moving the cases assigned to him. Initially, Judge D'Eramo issued an order in one case, *George Lee v. Lockheed Martin Corporation, et al.*, case number SX-07-CV-505, and directed the parties to submit a proposed scheduling order to govern discovery. The response, filed jointly on February 2, 2008 by Lee and Lockheed Martin, explained that Lee's case was "one of five cases filed by Plaintiffs' counsel against the . . . [Lockheed Martin] Defendants and various others." (Jt. Resp. to Feb. 2, 2008, Ct. Order 1, filed Mar. 10, 2008, *Lee v. Lockheed Martin Corp., et al.*, SX-07-CV-505.) The four other cases were *Lawrence Clark v. Lockheed Martin Corporation, et al.*, case number SX-07-CV-500, *Arthur George v. Lockheed Martin Corporation, et al.*, case number SX-07-CV-501, *LaBast*, and *Cyril Mitchell v. General Engineering Corporation, et al.*, case number SX-07-CV-504.[3] Since counsel for the plaintiffs was "preparing and intend[ed] to file and serve an additional thirty (30) to forty (40) [c]omplaints against all the Defendants," Lee and Lockheed Martin asked that the court "await the filing of these additional [c]omplaints for a period not to exceed sixty (60) days" and then "consolidate the cases solely for scheduling purpose[s]," issue a case management order, and create a master case as the Superior Court had been doing with other toxic tort cases. *Id.* at 1; *see also id.* at 2 (citing *In re: Catalyst Litig.*, SX-05-CV-799; and in *In re: Refinery Dust Claims*, SX-06-CV-078, as examples). "By integrating all these toxic tort cases" under a master case file and docket "the prosecution and defense of the matters would be rendered more efficient and will ease potential scheduling conflicts," counsel asserted. *Id.*

Although Lee and Lockheed Martin called their joint submission a response, they requested a stay (and submitted a proposed order), which converted the response into a motion. The court, by order entered April 2, 2008, granted the request and stayed *Lee* for sixty days. But after six months had passed and nothing occurred, the court issued an order (again only in *Lee*) to schedule a status conference for December 4, 2008. Although the order was only entered in *Lee*, it directed that three other cases would be heard together during the December 4, 2008 status conference: *Lee* and *LaBast* (which Lockheed and Lee had cited in their response) as well as *Ramon Peguero v. Lockheed Martin Corporation, et*

---

[3] Mitchell did not name Lockheed Martin or any of the Martin Marietta entities as defendants.

*al.*, case number SX-08-CV-053, and *Rostrom Lindo v. Lockheed Martin Corporation, et al.*, SX-08-CV-055, two more cases filed in 2008 that were also assigned to Judge D'Eramo. The other cases that Lee and Lockheed Martin cited in their response (*Clark, George,* and *Mitchell*) were not scheduled, presumably because they were still assigned to the other judges.

At the status conference, counsel for the plaintiffs again requested more time, saying he anticipated filing approximately thirty-five more cases like those filed in 2007 and 2008. One reason counsel proffered in support of deferring discovery in *Lee, LaBast, Peguero,* and *Lindo* until more cases could be filed was that none of the pending cases had been consolidated under a master case yet. This prompted the court to ask whether the parties preferred the *Lone Pine* approach,[4] a bellwether approach,[5] or some other approach to managing multiple cases. After briefly hearing from the parties, the court directed from the bench that they each file a proposed case management order within thirty days. By order entered January 5, 2009, the court rescheduled all four cases (*LaBast, Lee, Peguero,* and *Lindo*) for oral argument on February 24, 2009 to address the best way to manage the cases.

Counsel for the plaintiffs filed his proposal on January 8, 2009, and recommended the bellwether approach. By contrast, Alcoa on February 3, 2009, followed by Lockheed Martin on February 4, 2009, both suggested

---

[4] *See, e.g., Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 605 n.2 (5th Cir. 2006) ("Lone Pine orders, which derive their name from *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 N.J. Super. LEXIS 1626 (N.J. Sup. Ct. Nov. 18, 1986), are pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim.").

[5] *See, e.g., In re Chevron U.S.A.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock. The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray, and so it is in the mass tort context. The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar. . . . If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts. Common issues or even general liability may also be resolved in a bellwether context in appropriate cases." (internal citation and paragraph break omitted)).

the *Lone Pine* approach in their proposed orders. But, for reasons unclear from the record, counsel filed their proposed orders only in *LaBast*, even though *Lee*, *LaBast*, *Peguero*, and *Lindo* were heard together at status conference and even though the January 5, 2009 Order was issued in all four cases. That is, unlike the order issued in *Lee* that scheduled the December 2008 status conference, the January 5, 2009 order listed all four cases in its caption and the Clerk's Office also entered the order in all four cases.

After hearing from the parties on February 24, 2009, the court concluded, in an order entered March 13, 2009 (again in all four cases), "that the bellwether approach [would] best serve the purposes of case management." (Order on Case Mgmt 2, *Lee*, SX-07-CV-505.) The court then directed counsels — meaning the attorneys for "the parties in each of the cases listed in Schedule A of the Proposed Stipulated Case Management Order submitted by Plaintiff Erwin LaBast on January 8, 2009," *id.* at 2 n.3 — to meet and confer and decide upon a timeframe for discovery. Counsels had sixty days to submit a proposed case management order, but "in substantially the same form as the Proposed Order filed by Erwin LaBast . . . on January 8, 2009." *Id.* at 2. The parties complied and filed, on May 27, 2009, a document titled Stipulated Proposed Case Management Order. Counsel proposed that the Superior Court "create a master [case] file and a master docket" captioned *In re: Alumina Dust Claims* and consolidate under the master case twenty-two cases that were listed on an attachment. (*See* Stip. Case Mgmt. Order 1, filed May 27, 2009, in *LaBast/Alumina Dust*, SX-07-CV-502.) Like the proposed orders each party filed separately, the parties also filed their stipulated proposed order only in *LaBast*, perhaps because the Order on Case Management had directed them to follow the proposal LaBast had filed. Attached to the proposed order was a list of twenty-two cases,[6]

---

[6] Two of the cases counsel included on their list — *Theodore Simon v. Lockheed Martin Corporation, et al.*, case number SX-08-CV-052, and *Gabriel Alexander v. Lockheed Martin Corporation, et al.*, case number SX-08-CV-059 — were no longer pending in the Superior Court at the time when the parties filed their stipulated proposed order. Almost a year earlier, on July 1, 2008, St. Croix Alumina had removed both *Simon* and *Alexander* to the District Court of the Virgin Islands. By order entered December 21, 2016, the Court ordered that *Simon* and *Alexander* be closed administratively and directed the Clerk's Office to remove them both from the master case.

which counsel recommended for pre-trial consolidation under a master case.

The list of cases showed that most of the plaintiffs had sued Lockheed Martin Corporation and General Engineering Corporation, but some had also sued Alcoa as well as Glencore, Clarendon, and St. Croix Alumina, LLC. Yet, these companies did not join in the proposed order. (*Cf. id.* at 10 (signed by counsel for plaintiffs, Alcoa, Lockheed Martin, and General Engineering Corporation). In fact, St. Croix Alumina, Glencore, and Clarendon were not even served (individually or through counsel) with a copy of the May 27, 2009 Stipulated Case Management Order the other parties proposed. Additionally, none of the parties moved the Presiding Judge to reassign the cases counsel included on the list, which were still assigned to the other judges, so that one judge could consolidate all of the cases under a master case and coordinate pretrial litigation.

Judge D'Eramo passed away a month before the parties filed their proposed case management order. But, just before he passed away, Judge Darryl Dean Donohue, Sr. and Judge Julio A. Brady both issued orders — Judge Brady in *Clark* and Judge Donohue in *George* and *Mitchell* — and *sua sponte* transferred their cases to Judge D'Eramo because of the similarity between the parties and the legal issues with *LaBast*. Shortly after Judge D'Eramo's death, Judge Donohue, in his capacity as Presiding Judge of the Superior Court, designated Judge Edgar D. Ross as a senior sitting judge and assigned Judge D'Eramo's cases to him until the Governor nominated and the Legislature confirmed a successor. It was during this interregnum that Judge Ross, on June 5, 2009, approved the parties' proposed case management order. Four days later, the Clerk's Office entered the order. However, the proposed order only listed *LaBast* in the caption, not the name counsel proposed for the master case. (*Cf. id.* at 1 (proposing that the master case be "captioned *In re: Alumina Dust Claims*, Master Docket No. ___").) As a result, the Clerk's Office docketed the proposed order only in *LaBast*. Consequently, once Judge Ross signed the order, the Clerk's Office also only entered it in *LaBast*, without opening a different case with the caption *In re: Alumina Dust Claims* and without assigning a new or different case number to it.

Nothing further occurred until November 23, 2010 when Lockheed Martin filed a motion for summary judgment, but only as to LaBast's claims. For reasons unclear from the record, LaBast did not file his response in opposition until January 4, 2011. Lockheed Martin filed its

reply a week after that, on January 11, 2011. A day later, LaBast moved for permission to respond further to Lockheed Martin's reply, which this Court[7] granted by order entered March 8, 2011. LaBast then filed his surresponse on March 11, 2011.[8]

Around the same time that *LaBast* started moving again, Judge Donohue began to issue orders in the individual cases filed in 2008, which were assigned at random to him. Specifically, in *Ralph Cook v. Lockheed Martin Corporation, et al.*, SX-08-CV-060, *Richard Murray v. Lockheed Martin Corporation, et al.*, SX-08-CV-061, *Antonio Sealey v. Lockheed Martin Corporation, et al.*, case number SX-08-CV-062, *Thomas Cross v. Lockheed Martin Corporation, et al.*, SX-08-CV-063, and *Carmelo Ayala v. Lockheed Martin Corporation, et al.*, SX-08-CV-296, Judge Donohue issued orders, all entered on October 26, 2010, and directed the parties to move their cases forward because it appeared that the plaintiffs had not taken any movement since filing their complaints. When five months passed and none of the plaintiffs (or any of the defendants) responded, Judge Donohue dismissed each case for failure to prosecute. Five days later, Cook, Murray, Sealey, Cross, and Ayala motioned for reconsideration. Each gave the same reason for reopening his case:

> This case was consolidated for Discovery purposes together with 21 similar cases . . . by Order of Superior Court Judge, Edgar Ross on June 9th, 2009, under the caption, In re: Alumina Dust Claims.
>
> Shortly after the Court's 30 day Order of October 26, 2010 Lockheed Martin filed on November 22, 2010 a Summary Judgment [motion] in the lead consolidated case[ of] Erwin LaBast v. Lockheed Martin, et al. The . . . Motion effects [sic] all of the consolidated cases . . . [because] Lockheed Martin . . . argues that the Virgin Islands Workmen's Compensation Act bars Erwin LaBast and by inference

---

[7] The Clerk's Office reassigned *LaBast to* the undersigned judge on November 24, 2010, along with the other individual cases that were reassigned to Judge Ross following Judge D'Eramo's death.

[8] Although LaBast moved for leave to file a surreply, a second response is more aptly called a surresponse and the second reply called a surreply. *Cf. Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 121 (Super. Ct. 2016) ("A further response filed after the reply has been filed is called a surresponse, not a surreply, because it is the second response by someone who opposes a motion and generally comes in answer to the movant's reply." (internal quotation marks and citation omitted)).

180

each of the other 21 consolidated cases from filing a law suit against it.

Naturally, this Motion was of major importance and was immediately responded to. Indeed an Opposition to the Motion was filed, a Reply Brief, a Motion to File a Sur-Reply, an Order granting permission to file a Sur-Reply and a Sur-Reply was filed on March 11, 2011.

These Motions and Responses were directed to Judge Harold Willocks, who counsel understood was handling all of the above mentioned consolidated cases.

(Pl.'s Reconsid. Mot. 2, filed Apr. 4, 2011, *Cook v. Lockheed Martin Corp., et al.*, SX-08-CV-060 (citations omitted).) Each of the plaintiffs also attached to his motion for reconsideration a copy of the June 9, 2009 Case Management Order and the summary judgment motion papers filed in *LaBast*.

Before the defendants' time to respond had passed, Judge Donohue ruled on all five motions. Each order explained that the October 26, 2010 Orders had been issued in part because "it appeared" that the cases "had gone unprosecuted" since neither the case files nor the dockets showed any movement. (Order 1, entered Apr. 20, 2011, *Cook*, SX-08-CV-060.) "Certified copies" of the June 9, 2009 order "were not placed in the file[s]," the court noted, "nor entered on the dockets[ ] . . . . Therefore, the [c]ourt dismissed th[e] matter[s] without knowledge of the consolidation order." *Id.* at 2. Judge Donohue then granted the motions, vacated his dismissal orders, and reopened the plaintiffs' cases. But, given what had transpired in *Cook* and the other cases, Judge Donohue issued another order on April 11, 2011, but in the master case and in his capacity as presiding judge.

In this order, also entered April 20, 2011, Judge Donohue noted that the undersigned judge had taken over "the cases previously assigned to Judge Ross," which included the cases that Judge Ross had ordered consolidated through his June 9, 2009 order. (Order 1, entered Apr. 20, 2011.) However, the Clerk's Office "never fully processed" the "consolidation and reassignment" order once Judge Ross approved the parties' stipulated case management plan. *Id.* For this reason, and "in the interests of judicial economy," Judge Donohue ordered that all of the cases listed on the June 9, 2009 Order be reassigned to the undersigned judge. *Id.* (citing 4 V.I.C. § 72b(a) and FED. R. CIV. P. 42(a)). Judge Donohue then directed the

Clerk's Office to designate case number SX-07-CV-502 as the master case and to change its caption to *In re: Alumina Dust Claims*. To avoid further confusion, Judge Donohue also directed the Clerk's Office to add copies of his order and Judge Ross's June 9, 2009 Order to each individual case file and docket so the cases showed that were being managed under a master case.

Three months later, on July 15, 2011, Lockheed Martin filed approximately seventeen more motions for summary judgment, not counting the earlier motion filed in *LaBast*. Each motion noted in the caption which plaintiff it related to. However, all of the motions were filed in the master case (which is also where all of the responses and replies were later filed). Yet, despite filing multiple motions, the question at issue in each is the same: whether the plaintiffs' claims are barred by the immunity provided to employers through the Virgin Islands Workers' Compensation Act. *See* 24 V.I.C. § 250 *et seq.* Since the motions are nearly identical, word-for-word, this Court issued an order, entered September 23, 2011, and directed counsel to submit one brief in the master case, summarizing the facts, issues, and relevant law, and addressing the posture of the cases. The plaintiffs filed their brief on October 19, 2011, followed by Alcoa on October 21, 2011. Lockheed Martin filed its brief on October 23, 2011, and attached copies of certain pleadings, motions, orders, and party disclosures.

Approximately a year after briefing on the summary judgment motions had closed, the plaintiffs, without leave of court, filed a supplement on September 18, 2012 to their oppositions to Lockheed Martin's motions. Their reason for supplementing their responses was to provide the Court with a copy of a reply Lockheed Martin and the Martin Marietta entities had filed in another case, *Joseph Daniel, et al. v. Borinquen Insulation Company, et al.*, case number SX-98-CV-192. The plaintiffs did not explain, however, why the reply Lockheed Martin and the Martin Marietta entities filed in *Daniel* was relevant to the summary judgment motions pending in the *Alumina Dust* cases. Instead, the plaintiffs just merely concluded that it was and submitted a copy. (*See* Pls' Supp. to Opp'n to Movants Summ. J. Mot. 1, filed Sept. 18, 2012 ("SUBSEQUENT to the filings in this case in 2011, new matter has been filed by defendants in this Court in another case. It is a Reply Memorandum filed in *Daniel v. Lockheed Martin, et al.* on 03/12/12. The

new matter is contained on page 6 and is attached herein and is relevant to this case." (italics added) (paragraph break omitted)).

Subsequently, Lockheed Martin, General Engineering Corporation, and Alcoa, on June 26, 2013, filed a notice with a second stipulated proposed case management order for the Court's consideration. Predictably, the plaintiffs responded in opposition because the defendants' proposal sought to renew the *Lone Pine*/bellwether debate that Judge D'Eramo had settled in the March 13, 2009 Order on Case Management. (*See* Def. Lockheed Martin Corp.'s Not. of Filing Second Proposed Stip. Case Mgmt. Order 1, filed June 26, 2013 ("Lockheed advances the *Lone Pine* CMO to streamline discovery. In this consolidated series of cases, the Court is faced with thirteen [sic] plaintiffs alleging that exposure to bauxite, alumina dust and asbestos fibers resulted in the development of pneumoconiosis." (italics added)).) Lockheed Martin did "[a]dmit[ ]," however, in its reply, that "Judge Francis D'Eramo [had] issued a Case Management Order" and that "the parties [had] entered into a bellweather [sic] Stipulated Case Management Order" that Judge Ross subsequently granted. (Def. Lockheed Martin Corp.'s Reply to Pls' Obj. to Defs' Not. of Filing Second Proposed Stip. Case Mgmt. Order 2, filed July 29, 2013.) But Lockheed Martin argued that, because "an additional 13 silica exposure cases were filed *by Plaintiffs* against Defendants in June 2011, which have also been *consolidated with the present cases* but have never been subject to a CMO of any kind," the "litigation landscape" has since "changed" and so the "*Plaintiffs*" should be held to "a more stringent factual burden to state a claim for relief" like the burden imposed under the *Lone Pine* approach. *Id.* at 2-3 (emphasis added).

The changed "litigation landscape" that Lockheed Martin was referring to concerns an order this Court issued on December 14, 2012 in another case, *Nathaniel Halliday v. Lockheed Martin Corporation, et al.*, case number SX-11-CV-236. In that Order, the Court consolidated *Halliday* with twelve other cases for pretrial purposes, but without creating a master case at first. And just like *Alumina Dust*, Lockheed Martin also filed motions in the *Halliday* series of cases, asserting that the Virgin Islands Workers Compensation Act also barred those plaintiffs' claims. The Court later heard oral argument on Lockheed Martin's motions in the *Halliday* cases on October 11, 2013. During the hearing the Court questioned whether Lockheed Martin could even raise the workers compensation statute as a defense.

To explain, counsel for Lockheed Martin had represented that the entity "Lockheed Martin Corporation" was not formed until March 15, 1995 and that it had acquired both Lockheed Corporation and Martin Marietta Corporation. In other words, Lockheed Corporation and Martin Marietta Corporation did not merge to become Lockheed Martin Corporation. Rather, a new corporation was formed that acquired the other two companies. Therefore, since Lockheed Corporation did not exist until 1995, it could not be liable, individually, to any of the *Halliday* plaintiffs. Instead, its liability could only be as a successor to Martin Marietta Corporation, counsel argued. But concerning Martin Marietta's potential liability, Lockheed Martin argued that all "three subsidiary companies" — Martin Marietta Aluminum, Inc., Martin Marietta Alumina, Inc., and Martin Marietta Aluminum Properties, Inc. — "participated in the Virgin Islands Workmen's Compensation Insurance Fund during the relevant time periods." (Def. Lockheed Martin Corp.'s Reply in Supp. of Mot. to Dismiss/S.J. Mot. 3, filed Sept. 15, 2011, *Halliday*, SX-11-CV-236.) Hence, because Halliday's social security records (and also the other plaintiffs' records) showed that they worked for Martin Marietta Alumina or for Martin Marietta Aluminum Properties (or both), and since "Martin Marietta Corporation became the successor-in-interest to each of these subsidiary companies when they ceased to exist in the 1980s and Lockheed Martin . . . the successor-in-interest to all of these entities in 1995," *id.*, the *Halliday* plaintiffs' claims are barred. Halliday and the other plaintiffs had essentially sued their employer, Lockheed Martin argued, something Virgin Islands law does not permit.

Against this background the Court questioned whether one company could inherit (through acquisition or merger) another company's workers compensation immunity. If Lockheed Martin did not come into existence until 1995, and if only the former Martin Marietta entities were subject to the Virgin Islands' workers compensation laws, then it could follow that Lockheed Martin could not assert this statutory defense. Lockheed Martin and the plaintiffs requested, and the Court granted, leave to supplement their motion papers. However, only Lockheed Martin filed a supplemental brief. But the brief it filed listed both *In re: Alumina Dust* and *Halliday* in same the caption, even though leave was not granted to supplement the briefing in *Alumina Dust*.

Lockheed Martin filed another motion, on November 22, 2013, and again listed both *Alumina Dust* and *Halliday* in the same caption. In this

184

motion Lockheed requested permission to respond to the September 18, 2012 supplemental response the plaintiffs' had filed in *Alumina Dust*. Lockheed Martin argued that it had to have "leave to file a brief to address the 'Final Comment' contained in Plaintiffs' Supplemental Memorandum" because "Plaintiffs' counsel[ ] fundamental[ly] misunderstand[s] . . . the key differences between . . . *Daniel* and the instant matters." (Def. Lockheed Martin Corp.'s Motion for Leave to File Br. in Opp'n 1, filed Nov. 22, 2013.) But Lockheed Martin failed to note, that the *Halliday* plaintiffs did not file a supplemental response on September 18, 2012, since it would be another three months before the "additional 13 silica exposure cases" were consolidated under *Halliday*.

Due to the number of toxic tort cases that were pending in the St. Croix District, and because counsels were beginning to compound problems by grouping unrelated cases together in their filings (and, in at least one instance, attempting to designate one case to be the master case without obtaining court approval first), this Court, in its capacity as the Administrative Judge of the Superior Court, issued an order on January 23, 2015 and caused a miscellaneous case to be opened under the caption *In re: Complex Litigation Cases Pending in the District of St. Croix*, case number SX-15-MC-003. The January 23, 2015 Order scheduled a global status conference for February 26, 2015 to "begin discussions with counsels," from an administrative perspective only, on "how best to move through the court system the complex litigation cases pending in the Superior Court of the Virgin Islands."[9] (Order 1, entered Jan. 23, 2015, *In re Complex Lit. Cases Pending in St. Croix Dist.*, SX-15-MC-003.[10])

---

[9] The January 23, 2015 Order defined the phrase "complex litigation cases" to encompass "any lawsuit that alleges toxic tort claims arising from, related to, or concerning the former oil refinery or aluminum refinery on St. Croix and that also involves multiple parties, whether multiple plaintiffs who filed suit jointly, individual plaintiffs whose cases have been or can be consolidated, or multiple defendants and/or third-party actions." (*See* Order 1, entered Jan. 23, 2015, *In re Complex Lit. Cases Pending in St. Croix Dist.*, SX-15-MC-003.)

[10] Following the Virgin Islands Supreme Court's decision in *Vanterpool v. Government of the Virgin Islands*, 63 V.I. 563 (2015), in which the Court held that "it is the responsibility of the Presiding Judge of the Superior Court to 'assign the cases among all the judges of the court' " and further that this "assignment power" may not be "delegate[d] . . . to a different judge," *id*. at 574, the Presiding Judge, by order entered October 19, 2015, ratified and approved this Court's January 23, 2015 Order and further assigned the miscellaneous proceeding, *nunc pro tunc*, to the undersigned judge.

At the February 26, 2015 status conference, the Court and [counsel for] the parties discussed the status of all pending complex litigation cases, specifically which cases [counsel] ... believed had been settled, whether individual cases could be consolidated under a master case file and docket, and whether a special master could be appointed or [a mediator or] a senior judge designated to hear and resolve issues remaining in any of pending complex litigation cases, including previously-created master cases. The Court then continued the status conference to May 14, 2015 ... and ordered [counsel to] ... submit within thirty days a listing of all parties involved in each case, whether there are any motions pending and if so whether they are fully briefed and further whether the parties want to leave to supplement their arguments in light of *Government of the Virgin Islands v. Connor*, 60 V.I. 597 (2014).

(Order 1, entered Mar. 23, 2015, *Complex Lit. Cases*, SX-15-MC-003.)

Among other complex cases discussed at the February 26, 2015 status conference were the *Alumina Dust* cases and the *Halliday* series of cases, as well as another series of cases similar to *Halliday*, which this Court also consolidated in December 2012, but under *Roger Charles v. Glencore, Ltd, et al.*, case number SX-11-CV-262. In furtherance of these discussions, this Court, again in its administrative capacity, issued an order, entered March 17, 2015, and directed the Clerk's Office to open a master case file and docket under the name *In re: Bauxite Containing Silica Halliday Litigation Series*. Case number SX-15-CV-097 was assigned to this master case. But, because of the confusion caused by *LaBast* and *Alumina Dust* sharing the same case number, the Court directed that the *Halliday* series of cases be consolidated instead under a new case number. In another order, also entered March 17, 2015, the Court caused another master case to be opened under a similar name, *In re: Bauxite Containing Silica Charles Litigation Series*. The Clerk's Office numbered this case as SX-15-CV-098. As with the *Halliday* cases, the cases initially consolidated under *Charles* were moved to this master case number.

Despite efforts to the contrary, confusion persists. Once the *Bauxite* master cases were opened, the parties started filing documents under the caption *In re: Bauxite Containing Silica Alumina Dust Claims*. (*See, e.g.*, Def. Lockheed Martin Corp.'s Opp'n to Pls' Mot. for Status Conf., filed

Oct. 15, 2015; Pls' Motion for a Status Conf., filed Sept. 22, 2015.) It is against this backdrop that LaBast-Greene moved, on February 8, 2016, to have LaBast's case unconsolidated and reassigned to another judge. Then, on June 30, 2016, she moved for leave to substitute herself as personal representative. None of the defendants responded to either motion and nothing further has been filed to date. However, by order entered November 9, 2016, the Court approved a stipulation LaBast had filed before he passed away, agreeing to dismiss his claims against St. Croix Alumina and Alcoa. Considering the questions Lockheed Martin's motions raises regarding the exclusivity provision of the Worker's Compensation Act, the Court has withheld approving a stipulation fifteen plaintiffs filed in the master case to dismiss their claims against the Martin Marietta entities. Lastly, on September 22, 2015, the Court heard argument on the defendants' request to revisit the *Lone Pine*/bellwether debate and later denied that request as moot. In the interim, the Clerk's Office notified the parties of the new number assigned to the master case and continues to refile and redocket certain papers from the master case into the individual cases.

## DISCUSSION

The reassignment motion filed on behalf of Miriam LaBast-Greene states that Erwin LaBast "died of lung cancer on September 7, 2015" and that LaBast-Greene "has been appointed Personal Representative of the Estate of LaBast to continue the referenced litigation." (*See* Mot. for Order of Re-Assignment 1, filed Feb. 8, 2016.) As noted, none of the defendants opposed this motion. However, that alone does not end the Court's consideration. *Cf. Rashid v. Delta State Univ.*, 306 F.R.D. 530, 533 (N.D. Miss. 2015) ("[A] motion is not automatically granted simply because it is unopposed." (citation omitted)); *Quitugua v. Flores*, 2004 Guam 19, ¶ 28 (2004) (per curiam) ("[W]e emphasize that the failure to file a written opposition to a motion, the filing of a notice of non-opposition to a motion, or the disregard of untimely filed papers, does not require a court to automatically grant the motion and is not dispositive of the motion itself. The court has a duty to analyze the merits of the motion before rendering its decision." (footnote omitted)). Indeed, at the time LaBast-Greene filed her reassignment motion, two concerns were readily apparent: whether she had the authority to file any papers in *LaBast* and whether the Court has the authority to grant her reassignment motion. Only one of these concerns has been resolved.

187

■ Only the parties to a case may file documents and make requests of the court in that case. *Cf. Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 128-29 (Super. Ct. 2016) ("Any application — whether orally or in writing — made to a court or judge for the purpose of obtaining a ruling or order directing some act to be done in favor of the applicant in a pending case is a motion." (citation, quotation marks, and alteration omitted)); *see, e.g., Mortg. Elec. Regis. Sys. v. Saunders*, 2010 ME 79, 2 A.3d 289, 297 (Me. 2010) ("a non-party[ ] cannot file a motion to substitute parties."); *In re Marriage of Osborn*, 35 Kan. App. 2d 853, 135 P.3d 199, 201 (2006) ("[O]nly a party may file a motion in any civil action, unless specific leave to do so is granted by the court.'"); *In the Interest of Baby Girl S*, 343 S.W.3d 317, 317 (Tex. Ct. App. 2011) ("A non-party may not file a motion for new trial unless the non-party successfully intervenes." (citation omitted)); *accord In re Bergeron*, 636 F.3d 882, 883 (7th Cir. 2011) ("A nonparty cannot inject himself into a case without intervening." (citing *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S. Ct. 586, 98 L. Ed. 2d 629 (1988) (per curiam))); *United States v. Williams*, 4:10-cr-054, 2016 U.S. Dist. LEXIS 8529, at *5 (N.D. Fla. Jan. 21, 2016) ("A nonparty is not entitled to ask for relief on a defendant's behalf; only the parties may file motions or otherwise seek a ruling from a court."); *Ghashryah v. Frank*, 07-cv-308, 2007 U.S. Dist. LEXIS 72330, at *1 (W.D. Wis. Sept. 26, 2007) ("[D]ocuments . . . submitted by a non-party . . . cannot be considered. Only the parties to a lawsuit may file motions."); *Bean v. Hautamaki*, 04-cv-447, 2005 U.S. Dist. LEXIS 14370, at *2 (W.D. Wis. July 12, 2005) ("Only the parties to a lawsuit or their lawyers may file documents for the court's consideration in a lawsuit."). Documents filed by nonparties can be stricken from court files. *Cf. Der Weer*, 64 V.I. at 127 ("[A] pleading or paper placed on file *without right to file it*, may, on motion, be stricken from the files; and the court may, *sua sponte*, order such pleading or paper stricken from the files." (emphasis added) (citation omitted)).

■ Miriam LaBast-Greene is a not a party to *Erwin LaBast v. Lockheed Martin Corporation, et al.* She was not named as a plaintiff in the complaint Mr. LaBast filed on October 22, 2007, or in the amended complaint he filed on March 23, 2009. Thus, she lacked standing to file any motions or papers in LaBast's case. *See, e.g., Marriage of Osborn*, 135 P.3d at 201 ("In the absence of an order allowing C.M.O. to intervene as a party, she had no standing to file a motion in the divorce case.");

188

*State v. Brown*, 2014 UT 48, 342 P.3d 239, 242 (Utah 2014) ("Non-parties have no standing to file motions or to otherwise request relief. Such rights are conferred only on parties."); *accord Springel v. Prosser*, 50 V.I. 824, 828 (D.V.I. 2008) ("As a non-party . . . Dawn Prosser does not have standing to file a motion to withdraw the reference in that particular [bankruptcy] proceeding."); *In re Thornton*, 73 B.R. 178, 179 (Bankr. N.D. Ohio 1986) ("[C]reditor has no standing to bring the motion before the court. Debtors are the only parties who may file a motion deferring the order granting discharge."). Standing — in the sense of the constitutional restriction on the authority of courts — "is at best a non-jurisdictional claims-processing rule in Virgin Islands courts, since Article III of the United States Constitution does not apply to local courts and no provision of Virgin Islands law includes a case-or-controversy requirement." *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 687 n.8 (2015) (citation omitted). But standing, in another, more basic sense, also concerns whether someone has the right to be heard in a case.

 In this instance, LaBast-Greene did not move to intervene or to substitute *before* moving for reassignment. Rather, the same attorney who appeared on behalf of all of the plaintiffs including LaBast — but technically not on behalf of LaBast-Greene[11] — filed the motion to have *LaBast* reassigned to another judge. Nothing was submitted in support of

---

[11] The same attorney for LaBast and the other plaintiffs filed the February 8, 2016 motion for reassignment, presumably also as counsel for LaBast-Greene. Ordinarily, "the death of the client revokes his attorney's authority to act for him." *See, e.g., Hamilton v. Hughey*, 284 Ore. 739, 588 P.2d 38, 40 (1978) (citations omitted). Courts in the Virgin Islands have acknowledged this general rule. *See, e.g., Jacobson v. Haynes*, Civ. No. 68/2002, 2004 V.I. LEXIS 26, at *1 n.1 (Super. Ct. June 4, 2004) ("[T]he Court is well aware that the attorney client relationship terminated upon defendant's death." (citing *Bass v. Attardi*, 868 F.2d 45, 50 (3d Cir. 1989)); *cf. Sweeney v. Ombres*, 60 V.I. 438, 440 (2014) (acknowledging claim in the record that "death purportedly terminated [client's] attorney client relationship . . . and rendered [attorney] without authority to file [any] documents."). But it appears that no court in the Virgin Islands has yet considered whether adopting this common law rule is appropriate for the Territory. Assuming, without deciding, that the attorney-client relationship does terminate upon the death of the client, it would also follow then that the former attorney of a deceased client does not necessarily become the attorney for the personal representative of the deceased client or his estate. *Cf. id.* at 443 n.3 (declining to reach "any of the other issues raised in Sweeney's appellate brief, including his claim that the documents [the attorney] filed after Ombres's death were nullities with no legal effect."). The better course, if the same attorney is later retained by the deceased client's personal representative or estate, would be for that attorney to reappear by notice and identify her or his new client, and thereby avoid any doubt as to the attorney's authority to act. Presumably, LaBast-Greene retained LaBast's

that motion: not a copy of the death certificate for LaBast, nor a copy of the order purportedly granting LaBast-Greene authority to take over LaBast's case. In short, there is nothing in the record of this case that indicates who LaBast-Greene is. Counsel did not sign the motion under oath or have LaBast-Greene submit an affidavit in support. Ergo, LaBast-Greene simply lacked standing, meaning the right or permission, to file the February 8, 2016 motion for reassignment.

That said, LaBast-Greene subsequently cured any deficiency when she moved for leave to substitute herself in place of Erwin P. LaBast as personal representative of his estate. *Cf. Stiles v. Yob*, 65 V.I. 234, 240 (2016) ("[O]nce a court grants intervention the intervenor is treated as if it were an original party and has equal *standing* with the original parties." (emphasis added) (quotation marks, citation, ellipsis, second brackets, and alteration omitted)). Certainly, one party substituting in place of another party is not the same as a third party being allowed to intervene.[12] But substitution and intervention are similar in the sense that the parties to the case change. So, it stands to reason that if a non-party cannot take any action in a case until allowed in, either by intervention or by substitution, and once allowed in has equal standing with the original parties, then LaBast-Greene lacked standing (certainly not equal standing) with LaBast until the Court allowed her to substitute into the case and take the place of LaBast.

---

former attorney to represent her in as LaBast's personal representative. However, to avoid any doubt, the Court will order counsel to file a notice of reappearance.

[12] *See, e.g., Sawyer v. Kindred Nursing Ctrs. W., LLC*, 225 P.3d 1161, 1167 (Colo. Ct. App. 2009) ("Because the suggestion of death was not personally served on the Sawyer daughters as Mrs. Sawyer's personal representatives, the ninety-day time limit was not triggered. The trial court thus did not have authority to dismiss the case for failure to substitute parties. Accordingly, we conclude that the trial court lacked authority and thus improperly dismissed the first lawsuit for failure to substitute parties. As a result, the Sawyer daughters should have been permitted to intervene." (internal citations omitted)); *cf. Allen v. FDIC*, 710 F.3d 978, 982 (9th Cir. 2013) ("The cases sometimes use the terms substitution and intervention interchangeably, although the terms are not co-extensive." (citations omitted)). *Cf. Coffey v. Braddy*, 3:71-cv-44-J-32TEM, 2009 U.S. Dist. LEXIS 22034, at *8 n.7 (M.D. Fla. Mar. 6, 2009) (intervention and substitution in context of class actions) ("Although some of the cases reviewed use the terms 'intervention' and 'substitution,' it appears many courts use both those terms (sometimes interchangeably within the same sentence) to describe the replacement of class representatives, not necessarily meaning to ascribe to the terms their technical meaning under the Federal Rules of Civil Procedure." (citations omitted)).

In her June 30, 2016 Motion, LaBast-Greene again gave the date of LaBast's death. She also stated that she is a resident of St. Croix and, further, that she "was appointed the Personal Representative of decedent's estate by Order of this Court on October 22, 2015." (LaBast-Greene Mot. to Subst. 1, filed June 30, 2016.) While this motion was also unsworn and unaccompanied by an affidavit or any supporting documents, LaBast-Greene did note the court (which the Court took to mean the Superior Court) and the date (October 22, 2015) that her petition was granted. Consequently, in granting her substitution motion, the Court took judicial notice of a miscellaneous probate proceeding that LaBast-Greene had filed. *Cf. King v. Appleton*, 61 V.I. 339, 348 (2014) ("[T]he Superior Court 'may take judicial notice of the existence of a document that has been filed with it' in another proceeding." (quoting *In re J.J.J.*, 59 V.I. 319, 329 (2013), parenthetically)).

On October 15, 2015, Miriam LaBast-Greene filed a petition with the Superior Court to be appointed personal representative of the Estate of Erwin P. LaBast. The Probate Division docketed her petition as a miscellaneous probate matter, captioned the case as *In re Estate of Erwin P. LaBast*, case number SX-15-MP-015, and assigned it to a Superior Court magistrate judge. In an affidavit, dated October 2, 2015 and attached to the petition, LaBast-Greene affirmed that Erwin LaBast is her brother, that he passed away on September 7, 2015, and that she is a resident of St. Croix and is "willing to prosecute" a civil action on her brother's behalf. (LaBast-Greene Aff., attached to Pet, filed Oct. 15, 2015, *In re: Estate of LaBast*, SX-15-MP-015.) LaBast-Greene also submitted a copy of her brother's death certificate. By order entered October 23, 2015, the Magistrate Court granted the petition and appointed LaBast-Greene as personal representative. The Probate Division then closed the miscellaneous proceeding. Approximately three months later, LaBast-Greene filed her reassignment motion in this case, followed by her substitution motion filed four months after that.

Virgin Islands law provides that "[n]o action shall abate by the death . . . of a party . . . if the cause of action survives or continues." 5 V.I.C. § 78. Personal injury, or tort, claims survive the death of both the plaintiff as well as the defendant. *See id.* § 77 ("A thing in action arising out of a wrong which results in physical injury to the person . . . shall not abate by reason of the death of the wrongdoer . . . nor by reason of the death of the person injured."). And "[i]n case of the death . . . the court

may at any time within two years thereafter, on motion, allow the action to be continued by . . . his personal representatives . . . ."[13] *Id.* § 78. Thus, LaBast-Greene has been appointed personal representative and she filed a motion within the two-year deadline. Ergo, she has the right to continue LaBast's claims and pursue damages on his behalf, which if recovered will "form part of the estate." *Id.* § 77. For this reason the Court issued the November 17, 2016 Order and granted LaBast-Greene's substitution motion. But the Court cannot rule on the reassignment motion.

In her reassignment motion, LaBast-Greene states that "policy of the Superior Court, St. Croix Division in complex litigation cases" has been "to re-assign 'Estate plaintiff' cases" to the judge assigned to the Family Division. (LaBast-Greene Reassign. Mot. 1.) The policy LaBast-Greene points to is a decision this Court made in the capacity of the Administrative Judge in the *Complex Litigation Cases* matter. By order entered August 6, 2015, the Court identified a number of cases

> brought against the former oil refinery on St. Croix in which the plaintiff is either a personal representative of an estate or where one or more plaintiffs in the case have died over the course of litigation and a motion to substitute a personal representative for that plaintiff's estate is pending (hereinafter "estate plaintiff cases"). (Order 1, entered Aug. 6,

---

[13] The Clerk's Office opened LaBast-Greene's miscellaneous proceeding as *In re Estate of Erwin P. LaBast* even though her petition was captioned as *In re: Petition for Appointment of Miriam LaBast-Greene as Personal Representative of the Estate of Erwin P. LaBast. (See* Pet. 1, filed Oct. 15, 2015, *In re Estate of LaBast,* SX-15-MP-015.) It is unclear why the caption of the case does not mirror the caption of the petition, particularly since a petition for appointment of a personal representative to commence or to continue a lawsuit is not the same as a petition for probate of an estate. The Court notes that the practice in the St. Croix Division of the Superior Court has been that judges (including magistrate judges) appoint personal representatives through a miscellaneous proceeding. *See, e.g., Abednego v. St. Croix Alumina, LLC,* 63 V.I. 153, 193-94 (Super. Ct. 2015); *Der Weer v. Hess Oil V.I. Corp.,* 60 V.I. 91, 95 (Super. Ct. 2014). Yet, the Court also notes that the Virgin Islands Code does not require that courts appoint personal representatives or authorize them to do so. If courts do have the authority to appoint a personal representative, it may be inherent in the authority to supervise probate proceedings. Concerns could arise from what are essentially ex parte, non-adversarial miscellaneous proceedings that give a semblance of legal status to an estate, but without formally opening an estate or, for example, giving notice to creditors or requiring that the personal representative acting on the estate's behalf be bonded. *Cf.* 15 V.I.C. § 239(a). However, since the parties have not objected, the Court declines to raise and resolve any concerns, *sua sponte,* particularly given that *LaBast* could soon be reassigned to another judge.

2015, *Complex Litig. Cases Pending in St. Croix Dist.*, SX-15-MC-003.)

Because Judge Denise A. Hinds Roach, the Superior Court judge assigned to the Family Division in the St. Croix District, agreed to assist the other judges with the amount of toxic tort cases pending,[14] this Court, in its administrative capacity, directed the Clerk to reassign a number of estate plaintiff cases to her for all further proceedings. Consequently, after LaBast died, LaBast-Greene motioned to have his case removed from the master case and reassigned to the Family Division judge.

At the time when this Court caused the *Complex Litigation Cases* matter to be opened, the Court understood the administrative judge position to possess the authority to issue administrative orders regarding the distribution and assignment of pending toxic tort cases. *Cf. In re: Cases Removed to the Dist. Ct. of the V.I.*, SX-98-CV-109 *et seq.*, 2016 V.I. LEXIS 154, at *55-57 n.30 (Super. Ct. Sept. 21, 2016) (noting decisions and orders issued by prior administrative judges, some with possible "dispositive effect in cases assigned to other judges." (citations omitted)). But since that time, the Supreme Court of the Virgin Islands held in *Vanterpool v. Government of the Virgin Islands*, 63 V.I. 563, 574 n.4 (2015), that "once a case has actually been assigned to a judicial officer, no individual other than the assigned judicial officer (through recusal) or the Presiding Judge (through exercise of the statutory reassignment power) may interfere with that assignment."

---

[14] As of the date the miscellaneous matter was opened, the number of complex cases pending in the St. Croix District numbered over a thousand. The Court did explain, however, that the list of cases attached to the order was

> meant to be exhaustive, meaning that all potentially complex cases . . . have been included. Some cases or series of cases on the list are pending and being actively litigated while others have lain dormant for years. Also included on the list are cases or series of cases that they may have been settled or resolved. The reason for including all possible cases on the attached list is so that court staff can determine whether a case can be closed because all claims — including any counterclaims brought by a defendant against another defendant, *see* SUPER. CT. R. 34, or third-party complaints — have been resolved against all parties or whether the case is still open because the claims of one or more parties must be resolved. A further reason for including all possible complex litigation cases is to apprise counsels of the sheer volume of complex litigation cases pending in this District. (Jan. 23, 2015 Order 1, *In re Complex Litig. Cases Pending in St. Croix Dist.*, SX-15-MC-003.)

Approximately three hundred more cases have been filed since that Order was issued.

■■ *Vanterpool* clarified that only the Presiding Judge can divide up the business of the court, which includes assigning and reassigning cases among the judges in the absence of an established procedure such as random assignment of cases by the Clerk's Office or reassignment after a judge recuses. *See id.* at 574 & n.4. Consequently, this Court cannot grant or deny LaBast-Greene's reassignment motion, only the Presiding Judge has that authority. Since the Superior Court has not established a procedure or promulgated a rule yet following *Vanterpool* to govern how motions for reassignment should proceed, the Court will, by separate order, direct the Clerk to transmit LaBast-Greene's reassignment motion to the Presiding Judge for further review.[15] But before that order could issue, *In re: Alumina Dust Claims* and *LaBast* had to be decoupled.

To explain, much of the confusion here was caused partly by a misunderstanding of how master cases function. This may also be why the Clerk's Office did not assign a new case number to *In re: Alumina Dust Claims* as the parties had proposed and as Judge Ross ordered. (*See* Stip. Case Mgmt. Order 1 (proposing that the master case file be "captioned *In re: Alumina Dust Claims*, Master Docket No. _____" with case number left blank)).) The Court takes judicial notice that the Superior Court, and the Territorial Court before it, often designated one plaintiff's case as a master case, akin to a lead plaintiff in a class action. *See, e.g., In re: Cases Removed*, 2016 V.I. LEXIS 154, at *24-25 n.16 ("Unfortunately, instead of giving the *Manbodh* master case a new or a different case number, the same number the Clerk's Office had assigned to the group complaint Kelvin Manbodh and others filed on May 23, 1997 was also used as the master case number."). Thus, when the Presiding Judge issued his April 20, 2011 Order and attempted to correct the oversight by designating LaBast's case as the master case, the result was two cases with the same case number. Consequently, if *Miriam LaBast-Greene, as Personal Representative of the Estate of Erwin P. LaBast v. Lockheed Martin Corporation, et al.* had been reassigned to another judge, that judge would also have also (indirectly) been assigned the *Alumina Dust Claims* master case as well.

---

[15] Over time and if practiced consistently, "the usage of a court becomes somewhat the law of the court," *Donnell v. Wright*, 199 Mo. 304, 97 S.W. 928, 931-32 (1906). Hence, the Court adds a note of caution against construing the "policy" that LaBast-Greene has relied on in her motion as though it were an established practice or custom of the Superior Court.

194

██ A master case is not really a case, not in the true sense. Summons does not issue in a master case. The master case does not proceed to trial. Judgment is not entered in a master case. A master case cannot be dismissed on motion. Rather, a court opens a master case as a judicial convenience so that multiple cases with similar claims or parties can be coordinated under a common case file and docket and litigation streamlined and simplified. *Cf. In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.*, 129 F. Supp. 2d 1207, 1208 (S.D. Ind. 2001) ("For the convenience of the parties and the Court, the Clerk of this Court will maintain a master docket with a single docket number and master record."). A master case closes when it has served its purpose. That is, when the reason a master was opened — whether to coordinate pre-trial discovery or to streamline pre-trial motion practice — has ended, the master case ends too. Similarly, like the caption of any other action, the caption assigned to a master case can only be amended by court order.[16]

---

[16] Captions serve a purpose, especially in consolidated cases or cases with multiple parties. *Cf. Adkins v. Safeway, Inc.*, 985 F.2d 1101, 1103, 300 U.S. App. D.C. 42 (D.C. Cir. 1993) (holding that "person whose name appears in the caption of a notice of appeal, followed by 'et al.,' has perfected *his* appeal . . . but not his fellow plaintiffs or defendants." (emphasis added) (internal citations omitted)). Captions inform the court, the counsel, and the public who the parties are, what type of case it is, and what case file the papers should be docketed and filed in. The caption is determined by the complaint or petition as filed or, in this instance, by the order that approved using a master case. The caption (even with errors) controls unless and until it is amended by the court, preferably on motion. *Cf. Canegata v. Schoenbaum*, 64 V.I. 252, 252 n.1 (Super. Ct. 2016) (noting possible typographical error in the caption, but listing the parties as named in the complaint); *Goodwin v. Fawkes*, 67 V.I. 104, 125 (Super. Ct. 2016) ("while courts do have the power to amend captions *sua sponte* it should not fall to the court in the first instance to order the amendment." (brackets, emphasis, and ellipses omitted)). Moreover, even dismissed parties remain in the caption until removed by court order. *Cf. Daniel v. Treasure Bay V.I. Corp.*, 62 V.I. 423, 425 n.2 (Super. Ct. 2015). While case captions can be abbreviated, only as directed by the Rules of the Superior Court. *See* SUPER. CT. R. 30 (except for documents that commence a case, "[e]very [other] pleading or paper filed . . . shall bear the docket number, caption of the case and title of the paper" and — when abbreviating the caption — only "state the name of the *first party on each side* with appropriate indication of other parties" (emphasis added). *Cf. Barber v. Catholic Health Initiatives, Inc.*, 180 Md. App. 409, 951 A.2d 857, 871 (Ct. Spec. App. 2008) ("[T]he plaintiffs need not restate the names of all defendants in every submission to the court, so long as all were named in the initial filing."). *But see Lewis v. Buckskin Joe's, Inc.*, 156 Colo. 46, 396 P.2d 933, 944 (1964) ("A verdict is not a pleading, and it seems unlikely that those who formulated [the r]ule[s] . . . in making an exception to naming parties in pleadings, had any intention of making the same exception for verdicts and judgments [and

Different cases cannot share the same case number. Hence, the Court, in its November 17, 2016 Order, directed the Clerk's office to assign a new case number to the master case file and docket.[17] *Cf. In re: Cases Removed*, 2016 V.I. LEXIS 154, at *24-25 n.16 (explaining that a master case should not share the same case number as one of the individual cases in the event that the individual case is "terminated prior to the termination of the remainder of the litigation." (citation and quotation marks omitted)). Given the confusion caused by *LaBast* and *Alumina Dust Claims* sharing the same case number, the Court further directed the Clerk's Office to determine which papers should be re-docketed under the new master case number, which papers should remain within *LaBast*, and whether any papers do not concern either *Alumina Dust* or *LaBast* and should be stricken from the master case and re-docketed in the individual cases.[18] Lastly, the November 17, 2016 Order also granted LaBast-Greene's substitution motion and ordered her to file an amended complaint to reflect that she has now substituted into litigation in place of her brother.

## CONCLUSION

Miriam LaBast-Greene did not have the right to take any action in *LaBast*, including motioning to have her brother's case reassigned,

---

opinions]."). Captions do not change on the whims of counsel. Hence, the parties are advised that *In re: Bauxite Containing Silica Alumina Dust Claims* is not a case (master or otherwise) in the Superior Court. Counsels proposed that *In re: Alumina Dust Claims* be the name of this master case and none of the parties have moved to amend this caption. Whatever the reason for the parties changing the caption, it is in error.

[17] Although it is the Clerk's duty to number the cases upon filing, *see* SUPER. CT. R. 30, the Court nonetheless directed the Clerk's Office to assign a number from the year 2009, corresponding to when Judge Ross directed that a master case be opened. Although numbers have no limit, and even though the numbers courts assign to their cases are for convenience's sake and to avoid confusion among files, in this instance, renumbering the master case with a 2016 case number could cause further confusion, including technical glitches in the Superior Court's electronic docketing system. In response, the Clerk's Office opened the master case with a miscellaneous civil case number, which more accurately reflects that a master case is not a true case, but rather a mechanism used to coordinate one or more aspects of litigation across a number of different cases.

[18] (*Cf.* Stip. Case Mgmt. Order, entered June, 9, 2009) (adopting recommendation that "[a]ny orders, pleadings, motions or other filed documents which apply to *more than one case* . . . be filed under the *In re: Alumina Dust Claims* caption . . . [while o]rders, pleadings, motions and other filed documents, which pertain to *only one case* . . . be filed in that case only." (emphasis added)).

because she was not yet a party to that case, notwithstanding that she had been appointed the personal representative of the Estate of LaBast. Only the parties to a case can file papers in the case and make requests of the court. But once LaBast-Greene moved to substitute herself as personal representative on behalf of the Estate of Erwin P. LaBast, the Court granted her motion. LaBast-Greene was appointed personal representative of LaBast's estate. Since LaBast's claims survive his death pursuant to Section 77 of Title 5 of the Virgin Islands Code, LaBast-Greene could substitute into this action and continue this lawsuit. Additionally, now that LaBast-Greene is a party to this case, her reassignment motion is properly before the court. But this Court cannot grant or deny that motion. Only the Presiding Judge of the Superior Court has the authority to assign and reassign cases between and among the judges in the absence of an established procedure. However, before the Presiding Judge could consider the reassignment motion, the Clerk's Office had to first assign a new case number to the master case and then disentangle *LaBast* from *In re: Alumina Dust Claims* by striking any of the master pleadings, filings, and orders from *LaBast* and re-docketing them either under the new master case number or within the individual cases. Once these tasks are completed, the Clerk's Office will then transmit LaBast-Greene's motion to the Presiding Judge for consideration of reassignment.